UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PROJECT ON GOVERNMENT OVERSIGHT, | |
| Plaintiff, | |
| v. | Civil Action No. 20-1415 (ABJ) |
| DEPARTMENT OF JUSTICE, | |
| Defendant. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

FACTUAL AND PROCEDURAL BACKGROUND ...................................................................... 1

STANDARD OF REVIEW .................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

I.      The Office Properly Redacted Information Pursuant to FOIA Exemption 5. ........ 4

      A.      Redactions Based on the Attorney-Client Privilege. .................................. 4

      B.      Redactions Based on the Deliberative Process Privilege............................ 7

      C.      Redactions Based on the Attorney Work-Product Doctrine Privilege...... 11

      D.      Redactions Based on the Presidential Communications Privilege. .......... 13

II.     The Office Fulfilled Its Segregability Obligations. ............................................. 16

CONCLUSION.................................................................................................................. 17

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page**

*Advocs. for the West v. United States Dep't of Just.*,
    331 F. Supp. 3d 1150 (D. Idaho 2018) ................................................................. 15

*Agrama v. IRS*,
    282 F. Supp. 3d 264 (D.D.C. 2019) ................................................................. 16

*Am. C.L. Union v. CIA*,
    Civ. A. No. 18-2784 (CJN), 2022 WL 306360 (D.D.C. Feb. 2, 2022) ................. 11

*Am. C.L. Union v. Nat'l Sec. Agency*,
    925 F.3d 576 (2d Cir. 2019) ................................................................. 10, 7

*Amadis v. Dep't of State*,
    971 F.3d 364 (D.C. Cir. 2020) ................................................................. 11

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................. 1-2

*Boyd v. Crim. Div.*,
    475 F.3d 381 (D.C. Cir. 2007) ................................................................. 16

*Brown v. Dep't of Just.*,
    742 F. Supp. 2d 126 (D.D.C. 2010) ................................................................. 3

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................. 1

*Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*,
    600 F. Supp. 114 (D.D.C. 1984) ................................................................. 9

*Citizens for Resp. & Ethics in Washington v. Dep't of Just.*,
    298 F. Supp. 3d 151 (D.D.C. 2018) ................................................................. 6-7

*Cleveland v. United States*,
    128 F. Supp. 3d 284 (D.D.C. 2015) ................................................................. 8

*Coastal States Gas Corp. v. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) ................................................................. 5, 8

*Citizens for Resp. & Ethics in Wash.v. Dep't of Homeland Sec.*,
    648 F. Supp. 2d 152 (D.D.C. 2009) ................................................................. 8

*Citizens for Resp. & Ethics in Wash. v. Dep't of Lab.*,
    478 F. Supp. 2d 77 (D.D.C. 2007) ................................................................. 3

*Dep't of Def. v. Fed. Lab. Rels. Auth.*,
    510 U.S. 487 (1994) ............................................................. 3

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
    532 U.S. 1 (2001) ............................................................... 8

*Dep't of Just. v. Tax Analysts*,
    492 U.S. 136 (1989) ............................................................. 3

*Elec. Frontier Found. v. Dep't of Just.*,
    739 F.3d 1 (D.C. Cir. 2014) ................................................... 10

*Elec. Privacy Info. Ctr. v. Dep't of Just.*,
    584 F. Supp. 2d 65 (D.D.C. 2008) ...................................... 13, 15

*Elec. Privacy Information Ctr. v. Dep't of Just.*,
    320 F. Supp. 3d 110 (D.D.C. 2018) ........................................ 13

*Energy Pol'y Advocs. v. Env't Prot. Agency*,
    Civ. A. No. 22-298 (TJK), 2023 WL 6388879 (D.D.C. Sept. 29, 2023) ........ 10-11

*Fisher v. United States*,
    425 U.S. 391 (1976) .......................................................... 5, 6

*FPL Grp. Inc. v. IRS*,
    698 F. Supp. 2d 66 (D.D.C. 2010) .......................................... 8

*Hooker v. Dep't of Health & Hum. Servs.*,
    887 F. Supp. 2d 40 (D.D.C. 2012) .......................................... 9

*In re Sealed Case*,
    121 F.3d 729 (D.C. Cir. 1997) ...................................... 8, 13, 14, 15

*Jud. Watch, Inc. v. Dep't of Just.*,
    20 F.4th 49 (D.C. Cir. 2021) ................................................ 8

*Jud. Watch, Inc. v. Dep't of Just.*,
    365 F.3d 1108 (D.C. Cir. 2004) ............................................. 4

*Jud. Watch, Inc. v. Dep't of Just.*,
    432 F.3d 366 (D.C. Cir. 2005) ...................................... 11, 12, 13

*Judicial Watch, Inc. v. Dep't of Def.*,
    913 F.3d 1106 (D.C. Cir. 2019) ......................................... 13, 14

*Loving v. Dep't of Def.*,
    550 F.3d 32 (D.C. Cir. 2008) ................................................ 4

*Mapother v. Dep't of Just.*,
    3 F.3d 1533 (D.C. Cir. 1993) ................................................ 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ........................................................................................... 2

*McCutchen v. Dep't of Health & Hum. Servs.*,
    30 F.3d 183 (D.C. Cir. 1994) ............................................................................. 3

*Mead Data Cent., Inc. v. Dep't of Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) ................................................................. 4, 5, 16

*Military Audit Project v. Casey*,
    656 F.2d 724 (D.C. Cir. 1981) ........................................................................... 2

*Nat'l Sec. Couns. v. Cent. Intel. Agency*,
    969 F.3d 406–12 (D.C. Cir. 2020) ..................................................................... 7

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ....................................................................................... 4, 8

*Petrol. Info. Corp. v. Dep't of Interior*,
    976 F.2d 1429 (D.C. Cir. 1992) ..................................................................... 7, 8

*Protect Democracy Project, Inc. v. U.S. Dep't of Just.*,
    Civ. A. No. 20-172 (RC), 2021 WL 1167094 (D.D.C. Mar. 26, 2021) .............. 15

*Pub. Citizen Health Rsch. Grp. v. FDA*,
    185 F.3d 898 (D.C. Cir. 1999) ........................................................................... 3

*Pub. Emps. for Env't Resp. v. EPA*,
    211 F. Supp. 3d 227 (D.D.C. 2016) ................................................................ 4-5

*Reps. Comm. for Freedom of Press v. FBI*,
    Civ. A. No. 15-1392 (RJL), 2022 WL 1908841 (D.D.C. June 3, 2022) ............. 10

*Reps. Comm. for Freedom of the Press v. FBI*,
    3 F.4th 350 (D.C. Cir. 2021) ....................................................................... 7, 10

*Rockwell Int'l Corp. v. Dep't of Just.*,
    235 F.3d 598 (D.C. Cir. 2001) ........................................................................... 4

*Schoenman v. FBI*,
    573 F. Supp. 2d 119 (D.D.C. 2008) ................................................................ 12

*Spirko v. U.S. Postal Serv.*,
    147 F.3d 992 (D.C. Cir. 1998) ....................................................................... 3-4

*Steinberg v. Dep't of Just.*,
    23 F.3d 548 (D.C. Cir. 1994) ............................................................................ 2

*Summers v. Dep't of Just.*,
    140 F.3d 1077 (D.C. Cir. 1998) ...................................................................... 16

*Tao v. Freeh,*
    27 F.3d 635 (D.C. Cir. 1994) ................................................................................................ 2

*Tax Analysts v. IRS,*
    117 F.3d 607 (D.C. Cir. 1997) ........................................................................................ 4, 5

*United States v. Nixon,*
    418 U.S. 682 (1974) ......................................................................................................... 14

*Wolf v. CIA,*
    473 F.3d 370 (D.C. Cir. 2007) ............................................................................................ 3

## **Statutes, Regulations, Rules, and Other Authorities**

5 U.S.C. § 552 ................................................................................................. 3, 4, 10, 11, 16

Fed. R. Civ. P. 56 .................................................................................................................. 1

Defendant Department of Justice ("Defendant" or "Department"), by and through the undersigned counsel, respectfully submits this memorandum of points and authorities in support of its motion for summary judgment.  Plaintiff Project on Government Oversight ("Plaintiff") submitted several Freedom of Information Act ("FOIA") requests to the Office of Legal Counsel (the "Office"); however, only one FOIA request is at issue—namely, the FOIA request submitted on October 1, 2018, requesting "[a] list of all [Office] opinions from January 1, 1998 through the present." *See* Compl. ¶ 4 (ECF No. 1).  The Office identified a total of twenty-two responsive lists created by a staff assistant for use within the Office as tables of contents for a set of binders of documents that were referred to by the Office attorneys desiring easy hard-copy access to the recent work of the Office.  Plaintiff only contests the Exemption 5 redactions in the Office's supplemental release of the requested lists.

As explained further below, the Department released all responsive, non-exempt information.  Accordingly, the Department has fully complied with its obligations under FOIA and thus, pursuant to Rule 56, the Court should grant the Department summary judgment because no genuine issue of material fact exists, and it is entitled to judgment as a matter of law.

## FACTUAL AND PROCEDURAL BACKGROUND

For the sake of brevity, Defendant respectfully refers the Court to the "Statement of Material Facts as To Which There Is No Genuine Issue" for the factual and procedural background of this FOIA case.

## STANDARD OF REVIEW

### I.   <u>Summary Judgment</u>

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

A genuine issue of material fact is one that "might affect the outcome of the suit under the

governing law." *Anderson*, 477 U.S. at 248.

The party seeking summary judgment must demonstrate the absence of a genuine issue of

material fact.  *See Celotex*, 477 U.S. at 248.  Once the moving party has met its burden, the

nonmoving part may not rest upon the mere allegations or denials of his pleading but must instead

establish more than "the mere existence of a scintilla of evidence" in support of his position.

*Anderson*, 477 U.S. at 252.  Thus, summary judgment is due if the non-moving party fails to offer

"evidence on which the jury could reasonably find for the [nonmovant]." *Id.*  When determining

whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable

inferences drawn therefrom, in the light most favorable to the nonmoving party.  *See Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

## II.      Summary Judgment Standard as Applied to FOIA Cases

To obtain summary judgment in a FOIA action, an agency must show, viewing the facts in

a light most favorable to the requester, that there is no genuine issue of material fact as to the

agency's compliance with FOIA.  *Steinberg v. Dep't of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994).

The Court may enter summary judgment based solely upon information provided in affidavits or

declarations when those affidavits or declarations describe "the justifications for nondisclosure

with reasonably specific detail, demonstrate that the information withheld logically falls within the

claimed exemption, and are not controverted by either contrary evidence in the record nor by

evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir.

1981).  A plaintiff "cannot rebut the good faith presumption" afforded to an agency's supporting

affidavits "through purely speculative claims about the existence and discoverability of other documents." *Brown v. Dep't of Just.*, 742 F. Supp. 2d 126, 129 (D.D.C. 2010).

## ARGUMENT

FOIA does not give the public unfettered access to government files. *McCutchen v. Dep't of Health & Hum. Servs.*, 30 F.3d 183, 184 (D.C. Cir. 1994). Although disclosure is the dominant objective of FOIA, there are several exemptions to the statute's disclosure requirements. *Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 494 (1994). FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of the Act's nine exemptions. 5 U.S.C. § 552(b); *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 150–51 (1989). To protect materials from disclosure, the agency must show that they come within one of FOIA's exemptions. *Pub. Citizen Health Rsch. Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007).

Although a *Vaughn* index is a common device used by agencies to meet their burden of proof, "the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Mil. Audit Project*, 656 F.2d at 738); *see also Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998)

("The form of the Vaughn index is unimportant and affidavits providing similar information can suffice." (citing *Gallant v. NLRB*, 26 F.3d 168, 172–73 (D.C. Cir. 1994))).

As shown in the attached Anderson Declaration and described further below, the Office released all segregable information and properly redacted the exempt information pursuant to FOIA Exemption 5.

## I.      **The Office Properly Redacted Information Pursuant to FOIA Exemption 5.**

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption shields documents of the type that would be privileged in the civil discovery context, including materials protected by the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, and the presidential communications privilege.  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008); *Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1113 (D.C. Cir. 2004); *Rockwell Int'l Corp. v. Dep't of Just.*, 235 F.3d 598, 601 (D.C. Cir. 2001).  The Office's Exemption 5 redactions are based on the attorney-client, deliberative process, and presidential communications privileges, and the attorney work-product doctrine.

### A.      **Redactions Based on the Attorney-Client Privilege.**

The attorney-client privilege covers "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice."  *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977).  This privilege protects "communications from attorneys to their clients if the communications 'rest on confidential information obtained from the client.'"  *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) (quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)).  Also, the privilege protects confidential communications from client to attorney and from attorney to client.  *See Pub. Emps.*

*for Env't Resp. v. EPA*, 211 F. Supp. 3d 227, 230 (D.D.C. 2016); *see also Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980) ("While its purpose  is to protect a client's disclosures to an attorney, the federal courts extend the privilege also to an attorney's written communications to a client[.]"); *Mead Data*, 566 F.2d at 254 n.25 ("[T]he [attorney-client] privilege has consistently included communications of the attorney to the client as well as vice versa."). Courts may infer confidentiality where communications suggest that "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests." *Coastal States*, 617 F.2d at 863; *see also Tax Analysts*, 117 F.3d at 618 ("In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer."). The privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976).

As the Anderson declaration describes, the principal function of the Office is to assist the Attorney General in his role as legal adviser to the President of the United States and to departments and agencies of the Executive Branch. *See* Anderson Decl. ¶ 2. The Office is often asked to provide advice and analysis with respect to very difficult and unsettled issues of law. *Id.* ¶ 4.

Here, all the material redacted from the responsive records, and at issue in this matter, were properly redacted material identifying the attorney-client privilege. *Id.* ¶ 21. The Office redacted cover only the name of the recipient and the title or brief description of the relevant entries, which identify the opinion's subject matter, thereby revealing at least some information about the client's confidential request for legal advice and in some instances the specific subject or question on which the client sought the Office advice. *Id.*  ¶ 22. The opinions referenced by the entries were authored by the Office attorneys and provided to the Office's clients throughout the Executive

Branch that sought confidential legal advice. *Id.*[1]  When asked to provide legal advice, the Office

attorneys stand in a special relationship of trust with these clients. *Id.* ¶¶ 6, 23.  The free and

candid flow of information between agency decisionmakers and their outside legal advisers (i.e.,

the Office) it depends on the decisionmakers' confidence that their requests along with the advice

they receive will remain confidential. *Id.* ¶ 5.  When clients seek advice from the Office advice,

they also must have confidence that the Office is able to maintain the confidentiality of the

questions they pose. *Id.* ¶ 23.  If clients lack that confidence, they may stop requesting written

seeking legal advice from the Office and as a result the quality of experienced and informed

government decisionmaking will suffer. *See id.* ¶¶ 6, 23.  Also, if the information is revealed it

will often reveal confidential communications from agency clients made for the purposes of

securing advice. *Id.* ¶ 5.  The need to protect the relationship of trust between the Office and the

client seeking its legal advice provides an additional reason for the Office's legal advice to stay

confidential. *Id.* ¶ 6.  Further, there is no evidence of any waiver of the privilege relating to the

redacted information at issue in this matter. *Id.* ¶¶ 33–34.

On several occasions, this court and multiple appellate circuit courts have found that

documents containing the Office legal advice to its clients throughout the Executive Branch were

protected by the attorney-client privilege and properly withheld pursuant to Exemption 5 on that

basis. *See Citizens for Resp. & Ethics in Washington v. Dep't of Just.*, 298 F. Supp. 3d 151, 155

(D.D.C. 2018), aff'd, 922 F.3d 480 (D.C. Cir. 2019) ("[S]everal courts have held that OLC

---

[1]     Each list contains entries identifying documents generated by the Office during the relevant
year.  Anderson Decl. ¶ 18. With some minor exceptions, each entry identifies the recipient of the
document, a title or brief description of the document, the date of the document, and one or more
names of the Office's attorneys.  *Id.* In many instances the redacted names "are not the signatories
or principal authors of the documents; among these names are [the Office] line attorneys who may
have assisted with the preparation of these documents or otherwise had some relevant information
about the matter." *Id.*; *see also* Ex. E at 1.

opinions are protected by attorney-client privilege, since they embody confidential legal advice

given by OLC to other components of the Executive Branch" and collecting cases); *See also, e.g.*,

*Nat'l Sec. Couns. v. CIA*, 969 F.3d 406, 410–12 (D.C. Cir. 2020) (upholding full withholding of

two Office of Legal Counsel opinions on the basis of attorney-client privilege and rejecting waiver

theory); *Am. C.L. Union v. Nat'l Sec. Agency*, 925 F.3d 576, 589 (2d Cir. 2019) (laying out

requirements for attorney-client privilege and noting that Office of Legal Counsel memorandum

at issue "meets these requirements easily").  The reasoning of these opinions applies no less to the

titles of documents revealing the subject matter of a client's request or specific legal question and

the client's identity.

Accordingly, the Office properly redacted the information based on the attorney-client

privilege.

### B.    Redactions Based on the Deliberative Process Privilege.

The deliberative process privilege protects intra- or inter-agency documents that are "both

pre-decisional and deliberative."  *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 362

(D.C. Cir. 2021); *accord Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993).  The

D.C. Circuit has held:

> A document is predecisional if it was prepared in order to assist an agency
> decisionmaker in arriving at his decision, rather than to support a decision already
> made.  Material is deliberative if it reflects the give-and-take of the consultative
> process.  Our recent decisions on the deliberativeness inquiry have focused on
> whether disclosure of the requested material would tend to discourage candid
> discussion within an agency.

*Petrol. Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992).  "Examples of

predecisional documents include 'recommendations, draft documents, proposals, suggestions, and

other subjective documents which reflect the personal opinions of the writer rather than the policy

of the agency.'" *Cleveland v. United States*, 128 F. Supp. 3d 284, 298–99 (D.D.C. 2015) (quoting *Coastal States*, 617 F.2d at 866).

The deliberative process privilege protects materials that would reveal "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (citation omitted). This privilege rests "on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front-page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001); *accord Jud. Watch, Inc. v. Dep't of Just.*, 20 F.4th 49, 54 (D.C. Cir. 2021). The deliberative process privilege is designed to prevent injury to the quality of agency decisions by: (1) encouraging open, frank discussions on matters of policy between subordinates and superiors; (2) protecting against premature disclosure of proposed policies before they are adopted; and (3) protecting against public confusion that might result from the disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's decision. *See Sears*, 421 U.S. at 151–53; *Coastal States*, 617 F.2d at 866; *CREW v. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152, 156 (D.D.C. 2009); *FPL Grp. Inc. v. IRS*, 698 F. Supp. 2d 66, 81 (D.D.C. 2010). The "ultimate aim" of the deliberative process privilege incorporated into Exemption 5 is to "prevent injury to the quality of agency decisions." *Petrol. Info.*, 976 F.2d at 1433–34 (internal quotations omitted). "There should be considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take—of the deliberative process—by which the decision itself is made'" because the agency is best situated "to know what confidentiality is

needed 'to prevent injury to the quality of agency decisions.'" *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Sears*, 421 U.S. at 151).

Here, all the redacted information is pre-decisional and deliberative. The reasons that the attorney-client privilege applicable is also what makes the deliberative process privilege applicable to the redacted client and title information. The legal advice is pre-decisional because it was prepared by the Office for the consideration of senior government decisionmakers to aid those decisionmakers in deciding how to proceed. *See* Anderson Decl. ¶ 24. The material is deliberative because it identifies advice that was provided about questions under consideration by those decisionmakers. *Id.* In addition, disclosure would reveal the decisionmakers' deliberations by implicitly conveying that those who requested the advice believed that those questions were important or challenging enough to seek legal advice from the Office. *Id.*; *see also, e.g.*, *Hooker v. Dep't of Health & Hum. Servs.*, 887 F. Supp. 2d 40, 58–59 (D.D.C. 2012) (withholding documents discussing development of draft because "'[t]he choice of what factual material . . . to include or remove during the drafting process is itself often part of the deliberative process, and thus is properly exempt under Exemption 5.'" (quoting *ViroPharma Inc. v. Dep't of Health & Hum. Servs.*, 839 F. Supp. 2d 184, 193 (D.D.C. 2012)). The redactions are narrowly tailored, allowing the date of the document to be revealed. *See* Anderson Decl. ¶ 24. As with the attorney-client privilege, the protection provided by this privilege is necessary to ensure that the Office's clients can request the Office's advice with confidence that their request will not be disclosed without further consultation. *Id.* Thus, the information was properly withheld under the deliberative process privilege because they are pre-decisional and deliberative.

As with the attorney-client privilege, courts have regularly and consistently found the Office advice to be properly withheld pursuant to Exemption 5's incorporation of the deliberative

process privilege.  *See, e.g.*, *Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 10 (D.C. Cir. 2014) (Office of Legal Counsel opinion at issue is "precisely the sort of" document "that is covered by the deliberative process privilege"); *Am. C.L. Union v. Nat'l Sec. Agency*, 925 F.3d at 592 (2d Cir. 2019) (laying out requirements for deliberative process privilege and noting that it is "clear that" the Office of Legal Counsel memorandum at issue "meets these criteria as well").

Also, release of the information would foreseeably harm the ability of the Office to discharge its legal advice responsibilities.  Under the FOIA Improvement Act of 2016, an agency may withhold information only if "the agency reasonably foresees that disclosure would harm an interest protected by an exemption" to FOIA or "disclosure is prohibited by law."  5 U.S.C. § 552(a)(8)(A)(i).  "The foreseeable harm requirement imposes an independent and meaningful burden on agencies."  *Reps. Comm.*, 3 F.4th at 369.  To carry this burden, an agency withholding documents under the deliberative process privilege must provide "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward."  *Id*. at 370.  Courts applying this standard—including on remand in that same case— have found it met when the foreseeable harm is to the same *type* of future agency deliberations. *See Reps. Comm. for Freedom of Press v. FBI*, Civ. A. No. 15-1392 (RJL), 2022 WL 1908841, at *4 (D.D.C. June 3, 2022) (disclosure of a particular draft OIG report "would severely hamper the efficient day-to-day workings of the OIG in reviewing agency operations, making factual findings, and offering recommendations for those operations" and "would seriously impair the OI''s process for preparing and finalizing such reports"); s*ee also, e.g.*, *Energy Pol'y Advocs. v. Env't Prot. Agency*, Civ. A. No. 22-298 (TJK), 2023 WL 6388879, at *6–7 (D.D.C. Sept. 29, 2023) (Disclosure of presentation slides used to brief White House officials would "hinder EPA officials'

candor in future policy discussions" and "chill the free exchange of ideas between Agency employees and White House officials" when evaluating potential regulatory strategies in the future.); *Am. C.L. Union v. CIA*, Civ. A. No. 18-2784 (CJN), 2022 WL 306360, at *9 (D.D.C. Feb. 2, 2022) (Disclosure of deliberations about prior CIA Director's nomination would harm "deliberations about efforts to support future nominations to high profile positions like the Director of the CIA.").

Here, release of the redacted information would undermine government decisionmakers' ability to seek and receive confidential legal advice from the Office, compromising the deliberative processes of the Executive Branch. *See* Anderson Decl. ¶ 29. The Office's legal advice can be a key input into deliberations throughout the Executive Branch. *Id*. Decisionmakers fearing forced disclosure of the legal issues that were considered during their deliberations will be or less likely to involve the Office or seek written advice from the Office on the most sensitive matters. *Id*. Their decisionmaking processes will necessarily suffer as a result. Simply put, releasing the withheld information would chill or deter the decision makers from engaging in the candid and frank discussions that are so important and necessary when resolving legal issues. *Id*. The Court has held that this type of chilling effect adequately fulfills the requirements of 5 U.S.C. § 552(a)(8)(A)(i)(I). *See Amadis v. Dep't of State*, 971 F.3d 364, 370–73 (D.C. Cir. 2020). Because the materials are pre-decisional and deliberative, the Office properly protected the redacted information based on the deliberative process privilege.

## C.    Redactions Based on the Attorney Work-Product Doctrine Privilege.

FOIA Exemption 5 "incorporates the work-product doctrine and protects against the disclosure of attorney work product." *Jud. Watch, Inc. v. Dep't of Just.*, 432 F.3d 366, 369 (D.C. Cir. 2005). The doctrine protects documents and memoranda prepared by attorneys in contemplation of litigation and/or administrative proceedings. *Schoenman v. FBI*, 573 F. Supp.

2d 119, 143 (D.D.C. 2008).  The attorney work-product privilege is broader than the other civil discovery privileges in that it protects factual material that is contained within the attorney work-product from disclosure.  *Jud. Watch*, 432 F.3d at 371 ("[F]actual material is itself privileged when it appears within documents that are attorney work-product.").  For that reason, factual material found within attorney work-product documents is not segregable from the legal analysis.  *Id.* (citing *Martin v. Off. of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987)).  If a document is fully protected as work product, then segregability is not required.  *Jud. Watch Inc.*, 432 F.3d at 371.

Here, the document identified List of OLC Opinions: January 2010 through December 2010, No. 7 is protected by the attorney work product doctrine because it was prepared by attorneys for the purpose of litigation.  *See* Anderson Decl. ¶¶ 21, 25; *see also* Ex. E.  More specifically, the document was prepared by the Office for the purpose of assisting a litigating component of the Department in determining the legal positions it would take in a particular case.  *See* Anderson Decl. ¶¶ 21, 25.  Release of the redacted information identifying this document would cause foreseeable harm.  *Id.* ¶ 30. The doctrine protects the confidentiality of attorneys' mental impressions, conclusions, opinions, and legal theories, and is necessary to functioning litigation. *Id.*  Although the Office attorneys do not directly litigate cases, they are often called upon by litigating components of the Department to advise on aspects of legal theories or to advise on briefs in areas in which they have subject matter expertise.  *Id.*  Compelled disclosure of the Office's input into the Department's development of litigation positions would undermine these processes, and the litigating components would be less likely to seek written advice from the Office in the future.  *Id.*  Also, there is no evidence of any waiver of the privilege.  *Id.* ¶¶ 33–34.

Because the Office document identified on the list is protected by the attorney work-product doctrine, and because "any part of a document prepared in anticipation of litigation . . . is protected by the work product doctrine and falls under exemption 5," *Judicial Watch v. Dep't of Just.*, 432 F.3d 366, 371 (D.C. Cir. 2005) (internal quotation marks and brackets omitted), the title of the document when copied to the list is protected.

Accordingly, the Office properly redacted the information based on the attorney work-product privilege.

**D.    Redactions Based on the Presidential Communications Privilege.**

In the FOIA context, agencies may assert Exemption 5 over material covered by the presidential communications privilege without an invocation of the privilege by the President. *See Elec. Privacy Information Ctr. v. Dep't of Just.*, 320 F. Supp. 3d 110, 117 & n.5 (D.D.C. 2018); *Elec. Privacy Info. Ctr. v. Dep't of Just.*, 584 F. Supp. 2d 65, 80 (D.D.C. 2008). "[U]nlike the deliberative process privilege," which is also protected by Exemption 5, "the presidential communications privilege applies to documents in their entirety, and covers final and post-decisional materials as well as pre-deliberative ones," therefore no segregability analysis is required. *In re Sealed Case*, 121 F.3d 729, 745 (D.C. Cir. 1997). And "[a]lthough the presidential communications privilege is a qualified privilege" in the civil discovery context, "subject to an adequate showing of need, FOIA requests cannot overcome the privilege because 'the particular purpose for which a FOIA plaintiff seeks information is not relevant in determining whether FOIA requires disclosure.'" *Judicial Watch, Inc. v. Dep't of Def.*, 913 F.3d 1106, 1112 (D.C. Cir. 2019) (quoting *Loving v. Dep't of Def.*, 550 F.3d 32, 40 (D.C. Cir. 2008)). Thus, if an agency has sufficiently justified the assertion of the presidential communications privilege over the withheld material, it is entitled to summary judgment on the lawfulness of that withholding.

The D.C. Circuit and "[t]he Supreme Court ha[ve] long recognized that '[a] President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately.'" *Judicial Watch, Inc.*, 913 F.3d at 1110 (quoting *United States v. Nixon*, 418 U.S. 683, 708 (1974)). The presidential communications privilege is "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution" because "relates to the effective discharge of a President's powers[.]"  *Nixon*, 418 U.S. at 708, 711.  The privilege also furthers "the public interest in candid, objective, and even blunt or harsh opinions in Presidential decisionmaking."  *Id.* at 708.  Beyond direct communications with the President, the D.C. Circuit has recognized that the privilege applies to communications "solicited and received by those members of an immediate White House adviser's staff who have broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate."  *Sealed Case*, 121 F.3d at 752 (D.C. Cir. 1997).

Here, the Office redacted information in documents identified as List of OLC Opinions: January 2010 through December 2010, No. 16, and List of OLC Opinions: January 2018 through December 2018, No. 4 under the presidential communications privilege because the information reflects communications with senior presidential advisers for the purpose of presidential decisionmaking.  *See* Anderson Decl. ¶¶ 21, 26; *see also* Ex. E.  More specifically, the redacted information pertains to advice from the Office on identified subjects to senior presidential advisers. *Id.*  The advice was solicited for the purpose of aiding them in their areas of responsibility to advise the President on matters of presidential decisionmaking.  *Id.* ¶ 26.  Release of this information was released it would cause foreseeable harm to the decisionmaking processes of the President and his

senior advisers.  *Id.* ¶¶ 7, 31.  As with other senior decisionmakers, the Office provides advice to the President and his advisers on a variety of topics which are often sensitive.  *Id.* ¶ 31.  The presidential communications privilege protects the withheld information in their entirety to give the President, the necessary confidentiality to conduct those deliberations.  *Id.*  Disclosure of the subjects of the Office's advice to the President's advisers were disclosed, it would breach that necessary confidentiality to make sensitive decisions and harm the President's ability in the future to rely on the availability of the Office's legal advice to effectively carry out the responsibilities of his office.  *Id.*  Also, compelled disclosure of the redacted information would threaten the quality of presidential decisionmaking by impairing the deliberative process in which those decisions are made.  *Id.* ¶ 26.

Courts presented with the question have found Office of Legal Counsel advice to presidential advisers properly withheld pursuant to Exemption 5's incorporation of the presidential communications privilege.  *See, e.g.*, *Protect Democracy Project, Inc. v. U.S. Dep't of Just.*, No. Civ. A. No. 20-172 (RC), 2021 WL 1167094, at *3 (D.D.C. Mar. 26, 2021) ("There is little doubt that at least the presidential communications privilege covers the OLC Memo" with similar characteristics); *Advocs. for the West v. Dep't of Just.*, 331 F. Supp. 3d 1150, 1165 (D. Idaho 2018) (Presidential communications privilege applies to Office of Legal Counsel memoranda transmitted "to senior presidential advisors in an effort to assist with presidential decision making and deliberations."); *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 584 F. Supp. 2d 65, 81 (D.D.C. 2008) (Office of Legal Counsel memoranda addressed to presidential adviser "were properly withheld pursuant to the presidential communications privilege.").

Accordingly, the information was properly redacted based on the presidential communications privilege.

## II.   **The Office Fulfilled Its Segregability Obligations.**

While an agency may properly withhold records or parts of records under one or more FOIA exemptions, it "must release 'any reasonable segregable portions' of responsive records that do not contain exempt information.'"  *Agrama v. IRS*, 282 F. Supp. 3d 264, 275 (D.D.C. 2019); *see also* 5 U.S.C. § 552(b) (requiring "any reasonably segregable portion of a record shall be provided to [the requester] after deletion of the portions which are exempt").  Non-exempt portions of a document "must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  Before approving the application of a FOIA exemption, district courts must make specific findings of segregability regarding the documents to be withheld.  *Summers v. Dep't of Just.*, 140 F.3d 1077, 1081 (D.C. Cir. 1998).  Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material.  *Boyd v. Crim. Div.*, 475 F.3d 381, 391 (D.C. Cir. 2007).

Here, the Office identified a total of twenty-two responsive lists created by a staff assistant for use within the Office as tables of contents for a set of binders of documents that were referred to by the Office attorneys desiring easy hard-copy access to the recent work of the Office.  *See* Anderson Decl. ¶ 16.  Plaintiff challenges only the twenty-three redactions made pursuant to Exemption 5 in the Office's supplemental response.  *Id.* ¶¶ 11, 19.  The Office carefully examined the documents and engaged in an extensive line-by-line review of each document at issue and identified information that could be released and information that was exempt from disclosure based on privilege.  *Id.* ¶¶ 32–34.  Following this extensive review, the Office determined it could partially release some of the information.  *Id.* ¶¶ 13, 32.  Consequently, the Office complied with its obligation to disclose reasonably segregable material.

**CONCLUSION**

For the foregoing reasons, the Court should grant the Department summary judgment.

Dated: February 21, 2024                    Respectfully submitted,
      Washington, DC

                                           MATTHEW M. GRAVES, D.C. Bar #481052
                                           United States Attorney

                                           BRIAN P. HUDAK
                                           Chief, Civil Division

                                           By: _____*/s/Stephanie R. Johnson*_____
                                             STEPHANIE R. JOHNSON
                                             D.C. Bar # 1632338
                                             Assistant United States Attorney
                                             601 D Street, NW
                                             Washington, DC 20530
                                             (202) 252-7874
                                             Stephanie.Johnson5@usdoj.gov

                                           *Attorneys for the United States of America*