**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| PROJECT ON GOVERNMENT OVERSIGHT,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARATMENT OF JUSTICE OFFICE OF LEGAL COUNSEL,<br><br>Defendant. | ) | Civil No. 20-1415 (ABJ) |

**MEMORANDUM OF POINTS AND AUTHORIOTIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................ iii

**INTRODUCTION** ........................................ 1

**FACTUAL BACKGROUND** ........................................ 1

**ARGUMENT** ........................................ 5

**I. LEGAL STANDARDS** ........................................ 5

**II. DOJ IMPROPERLY RELIED ON FOIA EXEMPTION 5 TO WITHHOLDTITLES OF OLC OPINIONS.** ........................................ 6

**A. Disclosing The 23 Withheld Titles Would Not Reveal Information Protected By The Attorney-Client Privilege.** ........................................ 7

**B. Disclosing The 23 Withheld Titles Would Not Reveal Information Protected By The Deliberative Process Privilege.** ........................................ 12

**C. Disclosing The Withheld Title Of Document 7 Would Not Reveal Information Protected By The Attorney Work-Product Doctrine.** ........................................ 16

**D. Disclosing The Withheld Titles Of Two Documents Would Not Reveal Information Protected By The Presidential Communications Privilege.** ...... 17

**III. DOJ HAS FAILED TO SATISFY THE FORESEEABLE HARM REQUIREMENT.** ........................................ 19

**IV. IF THE COURT HAS REMAINING CONCERNS ABOUT THE APPLICABILITY OF THE CLAIMED EXEMPTIONS IT SHOULD EXAMINE THE WITHHELD DOCUMENTS *IN CAMERA*.** ........................................ 22

**CONCLUSION** ........................................ 23

## TABLE OF AUTHORITIES

**Cases**

*ACLU v. Nat'l Sec. Agency*,

925 F.3d 576 (2d Cir. 2019) .......... 10

*Advocates for the West v. Dep't of Justice*,

331 F. Supp. 3d 1150 (D. Idaho 2018) .......... 18

*Birch v. U.S. Postal Serv.*,

803 F.2d 1206 (D.C. Cir. 1986) .......... 6

*Campbell v. Dep't of Justice*,

164 F.3d 20 (D.C. Cir. 1998) .......... 5

*Cause of Action Institute v. U.S. Dep't of Justice*,

330 F. Supp. 3d 336 (D.D.C. 2018) .......... 8

*Center for Investigative Reporting v. U.S. Custom & Border Prot.*, 436 F. Supp. 3d 90, 104

(D.D.C. 2019) .......... 20, 21, 22

*Coastal States Gas Corp. v. Dep't of Energy*,

617 F.2d 854 (D.C. Cir. 1980) .......... passim

*CREW v. Dep't of Justice*,

298 F. Supp. 3d 151 (D.D.C. 2018) .......... 9

*Dep't of Air Force v. Rose*,

425 U.S. 352 (1976) .......... 5

*Dep't of Defense v. FLRA*,

510 U.S. 487 (1994) .......... 6

*Dep't of Justice v. Reporters Comm. for Freedom of the Press*,

489 U.S. 749 (1989)........................................................................................... 5

*Dep't of Justice v. Tax Analysts*,

492 U.S. 136 (1989)........................................................................................... 5

*Direct of OTS v. Ernst & Young*,

795 F. Supp. 7 (D.D.C. 1992) .......................................................................... 10

*Elec. Frontier Found. v. Dep't of Justice*,

739 F.3d 1 (D.C. Cir. 2014) ............................................................................ 15

*Elec. Priv. Info. Ctr. v. Dep't of Justice*,

584 F. Supp. 2d 65 (D.D.C. 2008) ........................................................... 18, 19

*EPA v. Mink*,

410 U.S. 73 (1973).......................................................................................... 11

*Fisher v. United States*,

425 U.S. 391 (1976)...................................................................................... 7,12

*FTC v. Boehringer Ingelheim Pharms., Inc.*,

778 F.3d 142 (D.C. Cir. 2015)......................................................................... 16

*Gallant v. NLRB*,

26 F.3d 168 (D.C. Cir. 1994) ............................................................................ 6

*Goland v. CIA*,

607 F.2d 339 (D.C. Cir. 1978) .......................................................................... 6

*Hickman v. Taylor*,

329 U.S. 495 (1947)......................................................................................... 16

*Hussain v. DHS*,

674 F. Supp. 2d 260 (D.D.C. 2009) .......................................................................................... 6

*In re Kellogg Brown & Root, Inc.*,

756 F.3d 754 (D.C. Cir. 2014) ................................................................................................ 8

*In re Lindsey*,

148 F.3d 1100 (D.C. Cir. 1998)................................................................................................ 8

*In re Sealed Case*,

121 F.3d 729 (D.C. Cir. 1997) ................................................................................... 13, 14, 17

*Janicker v. George Washington Univ.*,

94 F.R.D. 648 (D.D.C. 1982)................................................................................................ 16

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*,

926 F. Supp. 2d 121 (D.D.C. 2013) ................................................................................... 8, 11

*Judicial Watch, Inc. v. U.S. Secret Serv.*,

726 F.3d 208 (D.C. Cir. 2013) ................................................................................................ 6

*Loftin v. Bande*,

258 F.R.D. 31, (D.D.C. 2009)................................................................................................ 10

*Loving v. Dep't of Def.*,

550 F.3d 32 (D.C. Cir. 2008) .................................................................................................. 7

*Milner v. U.S. Dep't of Navy*,

562 U.S. 562 (2011)................................................................................................................. 5

*Pavement Coatings Tech. Council v. U.S. Geological Survey*,

995 F.3d 1014 (D.C. Cir. 2021) .............................................................................................. 6

*Protect Democracy Project, Inc. v. U.S. Dep't of Justice*,

Civ. A. No. 20-172 (RC), 2021 WL 1167094, *3 (D.D.C. Mar. 26, 2011) .............................. 18

*Pub. Emps. For Env't Resp. v. EPA*,

211 F. Supp. 3d 227 (D.D.C. 2016) ........................................................................ 7

*Public Citizen, Inc. v. Dep't of State*,

100 F. Supp. 2d 10 (D.D.C. 2000) ........................................................................ 16, 17

*Quinon v. FBI*, 86 F.3d 1222 (D.C. Cir. 1996) ................................................ 22

*Ray v. Turner*,

587 F.2d 1187 (D.C. Cir. 1978) ........................................................................ 23

*Reporters Comm. for Freedom of the Press v. FBI*,

3 F.4th 350 (D.C. Cir. 2021) ........................................................................ 5, 14, 20, 21

*Rosenberg v. U.S. Dep't of Defense*,

342 F. Supp. 3d 62 (D.D.C. 2018) ........................................................................ 19, 22

*Soghoian v.U.S. Dep't of Justice*,

885 F. Supp. 2d 62 (D.D.C. 2012) ........................................................................ 12

*Tax Analysts v. IRS*,

117 F.3d 607 (D.C. Cir. 1997) ........................................................................ 7

*United States Fish & Wildlife Serv. v. Sierra Club, Inc.*,

141 S. Ct. 777 (2021) ........................................................................ 13

*Valencia-Lucena v. U.S. Coast Guard*,

180 F.3d 321 (D.C. Cir. 1999) ........................................................................ 5

*Vaughn v. Rosen*,

484 F.2d 820 (D.C. Cir. 1973) ........................................................................ 11

*Vento v. IRS*,

714 F. Supp. 2d 137 (D.D.C. 2010 .......... 7

*Weisberg v. U.S. Dep't of Justice*,

705 F.2d 1344 (D.C. Cir. 1983) .......... 5-6

*Witt v. Department of the Air Force*,

527 F.3d 806 (9th Cir. 20080) .......... 9

*Wolfe v. Dep't of Health & Human Servs.*,

839 F.2d 768 (D.C. Cir. 1988) .......... 13

**Statutes**

28 C.F.R. § 0.25(a) .......... 1

28 C.F.R. § 0.25(c) .......... 2

28 U.S.C. § 509 .......... 2, 12

28 U.S.C. §§ 511-12 .......... 1, 12

5 U.S.C. § 552(a)(4)(B) .......... 5, 6

5 U.S.C. § 552(a)(8)(A)(i) .......... 19

5 U.S.C. § 552(b)(5) .......... 7

**Other Authorities**

162 Cong. Rec. H3717 (2016) .......... 20

74 Fed. Reg. 4683 (Jan. 21, 2009) .......... 20

H.R. Rep. No. 114-319 .......... 22

S. Rep. No. 114-4 .......... 20, 22

**Rules**

Fed. R. Civ. P. 26(b)(5)(ii) .......... 11,17

## INTRODUCTION

This case presents the narrow issue of whether titles of various opinions issued as long as 15 years ago by defendant Office of Legal Counsel ("OLC"), a component of the Department of Justice ("DOJ"), fall within Exemption 5 of the Freedom of Information Act ("FOIA") because they are protected by the attorney-client privilege, the deliberative process privilege, the attorney work-product doctrine, or the presidential communications privilege. Whatever the reach of those privileges to the opinions themselves, they do not extend to the handful of words comprising each *opinion title*, words that alone reveal no privileged information.

Indeed, the opinion titles OLC seeks to protect from compelled disclosure comprise precisely what the agency would have to disclose in a privilege log or *Vaughn* index. Tellingly OLC cites no contrary case supporting its novel approach that revealing mere opinion titles would implicate a privilege within the scope of FOIA Exemption 5. Nor has DOJ satisfied the FOIA's foreseeable harm requirement with the requisite specific and focused showing. Because Defendant has failed to demonstrate its entitlement to summary judgment, its motion must be denied and Plaintiff's cross-motion for summary judgment granted.

## FACTUAL BACKGROUND

OLC derives its functions from the Judiciary Act of 1789, which charged the Attorney General with, among other duties, rendering advice and opinions on legal questions at the request of either the President or agency heads. Judiciary Act of 1789, ch. 20, § 35, 1 Stat. 73, 93, currently codified at 28 U.S.C. §§ 511-12. Current DOJ regulations define the function of OLC to include the preparation of "the formal opinions of the Attorney General," 28 C.F.R. § 0.25(a), and "rendering opinions to the Attorney General and to the heads of the various organizational units of the Department on questions of law arising in the administration of the Department." *Id.*

at § 0.25(c). Beyond this statutory authority, the President by executive authority has directed agency heads to submit inter-agency disputes to the Attorney General "[w]henever two or more Executive agencies are unable to resolve a legal dispute between them." Exec. Order No. 12,146, § 1-401, reprinted as amended in 28 U.S.C. § 509 (1988). That authority to resolve such disputes now resides with OLC. Att'y Gen. Order No. 9-53 (Apr. 3, 1953).[1]

Transferring this function to OLC was far from an historical accident. Attorney General Griffin Bell, who began the tradition of having OLC compile and publish certain of its opinions,[2] was a fierce advocate for entrusting OLC, as "a dispassionate and detached institutional actor," with developing a "coherent, consistent interpretation of the law[.]"[3] Through its formal written opinions OLC continues to serve as "a centralized and singular voice of executive branch legality." *Id.* at 821.

An internal OLC memorandum reinforces OLC's core function as providing "controlling" legal interpretations to executive branch officials on questions of law that are centrally important to the functioning of the federal government. Memorandum from Acting Assistant Attorney General David J. Barron to Attorneys of the Office, *Best Practices for OLC Legal Advice and Written Opinions*, July 16, 2010 ("Best Practices Memo"), *available at*

---

[1] That order renamed OLC as the Executive Adjudications Division of DOJ. In 1950 the Executive Adjudications Division assumed the responsibilities of the office of the assistant solicitor general, which was created in 1933 by the Independent Offices Appropriation Act, Pub. L. No. 73-78, § 16(a), 48 Stat. 283, 307 (1933), and to which the Attorney General had delegated the responsibility to draft legal opinions and provide legal advice to other executive branch agencies.

[2] *See* Foreword, 1 Op. O.L.C. Supp., at vii-viii (2013).

[3] Daphna Renan, *The Law Presidents Make*, 103 Va. L. Rev. 805, 822 (2017), quoting Griffin B. Bell, U.S. Att'y Gen., Remarks Adapted from the Eighth Annual John F. Sonnett Memorial Lecture at Fordham University School of Law (Mar. 14, 1978), in The Attorney General: The Federal Government's Chief Lawyer and Chief Litigator, or One Among Many?, 46 Fordham L. Rev. 1049, 1064 and 1068 (1978).

https://www.justice.gov/olc/best-practices-olc-legal-advice-and-written-opinions. As that memo makes clear, OLC's formal opinions effectively may be the final word on controlling law because OLC frequently is asked to weigh in on "issues of first impression that are unlikely to be resolved by the courts[.]" *Id.* at 1.

OLC's Best Practices Memo also highlights the importance of public disclosure. OLC "operates from the presumption that it should make its significant opinions fully and promptly available to the public" to ensure "accountability and effective government, and promot[e] public confidence in the legality of government action." *Id.* at 5. Particularly where OLC "concludes that a federal statutory requirement is invalid on constitutional grounds and when the Executive Branch acts (or declines to act) in reliance on such a conclusion" timely publication plays a critical role in assuring the public "that Executive action is based on sound legal judgment and in furtherance of the President's obligation to take care that the laws, including the Constitution, are faithfully executed." *Id.*

*FOIA Request At Issue*

On October 1, 2018, Plaintiff Project On Government Oversight ("POGO") submitted a FOIA request to OLC seeking: "[a] list of all OLC opinions from January 1, 1998 through the present." *See* Ex. A to Compl. (ECF No. 1-5). In explaining how the public interest in the requested records outweighs any privacy interest on which OLC might rely to withhold portions of the requested documents POGO noted that OLC's opinions "have the potential to change the course of our nation." *Id.* at 6. POGO cited as an example the so-called "torture memos" that, as POGO noted, "have had dramatic effects in American foreign policy as well as national security." *Id.*

POGO's request also explained that the titles of OLC's opinions fall outside the protection of the deliberative process privilege. POGO pointed to the congressional testimony of former Attorney General Michael Mukasey in 2008 that "the Justice Department . . . could not investigate or prosecute somebody for acting in reliance on a Justice Department opinion[.]" *Id.* at 4. By "effectively grant[ing] immunity from prosecution" OLC's opinions "are clear statements of established DOJ policy, and therefore cannot be deemed predecisional." *Id.* Moreover, as POGO further explained, the attorney-client privilege does not protect the titles from disclosure given that those titles encompass neither "facts divulged by a client to his attorney" nor "any advice based on confidential facts supplied by a client." *Id.* at 5.

OLC issued its final response to this request on April 18, 2019, releasing 22 records with redactions pursuant to FOIA Exemptions (5) and (6). Compl. ¶ 115. After communicating to OLC specific questions about the release, *id.* ¶¶ 117-119, POGO filed an administrative appeal on May 9, 2019. *Id.* ¶ 121. As a result of that appeal the matter was remanded to OLC for a further search. *Id.* ¶ 125. On remand OLC provided POGO with an additional list of OLC titles with redactions pursuant to Exemptions 5 and 6. *See* Exhibit D to Declaration of Trisha Anderson ("Anderson Decl.") (ECF No. 54-4). OLC further noted that most of the redacted material was classified. *Id.* In a supplemental response on April 28, 2023, after the Complaint was filed in this matter on May 28, 2020 (ECF No. 1), OLC advised POGO it had reprocessed the lists and continued to rely on Exemptions 5 and 6 to withhold portions, although it lifted some redactions. *See* Exhibit E to Anderson Decl. at 32 (ECF No. 54-4). POGO contests only the Exemption 5 withholdings of the titles of 23 listed opinions but does not contest DOJ's withholding of specific

publication dates and, in some instances, the opinions' authors.[4] Notably, the documents at issue simply contain titles—they are not the opinions or memoranda themselves.

## ARGUMENT

### I. LEGAL STANDARDS

Congress enacted the FOIA to create an enforceable, statutory right of "access to information long shielded unnecessarily from public view." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted). The FOIA serves the "core purpose" of increasing "public understanding *of the operations or activities of the government*." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 775 (1989) (internal quotation omitted) (emphasis in original). As the D.C. Circuit has recognized, "[t]he fundamental principle animating FOIA is public access to government documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999).

FOIA cases differ from typical administrative review cases not only because the court exercises *de novo* review under the express language of the statute, 5 U.S.C. § 552(a)(4)(B), but also because the government bears the burden of proving that an asserted exemption applies. *Id.*; *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021); *Campbell v. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999).

Further, "[c]onsistent with the Act's goal of broad disclosure, courts must give these exemptions "a narrow compass." *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989). *See also Milner v. U.S. Dep't of Navy*, 562 U.S. 562, 565 (2011). Courts must also view the underlying facts "in the light most favorable to the requester." *Weisberg v. U.S. Dep't of Justice*,

---

[4] For the Court's convenience the pages containing the contested redactions are Exhibit A to this memorandum.

705 F.2d 1344, 1350 (D.C. Cir. 1983). Courts typically decide FOIA cases on summary judgment, which a court may grant for the government only if finds there is no genuine issue of material fact as to the application of an exemption. *Pavement Coatings Tech. Council v. U.S. Geological Survey*, 995 F.3d 1014, 1020 (D.C. Cir. 2021). Stated differently, because the FOIA "reflects a general philosophy of full agency disclosure," *Dep't of Defense v. FLRA*, 510 U.S. 487, 494 (1994) (internal quotations omitted), an agency's failure to meet its burden of proof properly results in a disclosure order. *See Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 214-15 (D.C. Cir. 2013) (FOIA "grants federal district courts jurisdiction 'to order the production of any agency records improperly withheld from the complainant.'") (quoting 5 U.S.C. § 552(a)(4)(B)).

An agency satisfies this evidentiary burden by providing "a detailed description of the information withheld[.]" *Hussain v. DHS*, 674 F. Supp. 2d 260, 267 (D.D.C. 2009). These descriptions, typically provided through a *Vaughn* index as supplemented by an agency declaration, must "give the reviewing court a reasonable basis to evaluate the claim of privilege." *Gallant v. NLRB*, 26 F.3d 168, 172 (D.C. Cir. 1994) (citation omitted). The agency must prove that "each document that falls within the class requested has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation omitted). Further, an agency "must demonstrate to a reviewing court that records withheld are *clearly* exempt." *Birch v. U.S. Postal Serv.*, 803 F.2d 1206, 1209 (D.C. Cir. 1986) (quotation omitted) (emphasis added).

## II. DOJ IMPROPERLY RELIED ON FOIA EXEMPTION 5 TO WITHHOLD TITLES OF OLC OPINIONS.

Agencies may rely on Exemption 5 to protect from disclosure "inter-agency or intra-agency memorandums or letters which would not be available to a party other than to an agency

in litigation with the agency." 5 U.S.C. § 552(b)(5). Pertinent here, Exemption 5 "does not protect documents that are "'routinely' or 'normally' disclosed" in civil discovery." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (citation omitted). OLC has relied on the attorney-client, deliberative process, and presidential communications privileges and the attorney work-product doctrine to withhold virtually all the words of the titles of 23 OLC opinions. As discussed below, because disclosure of the withheld information would not implicate the interests the privileges were designed to protect, Exemption 5 does not protect the documents from required disclosure under the FOIA.

### A. Disclosing The 23 Withheld Titles Would Not Reveal Information Protected By The Attorney-Client Privilege.

As summarized by the D.C. Circuit, "[t]he attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services," and "communications from attorneys to their clients if the communications rest on confidential information obtained from the client." *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997). While "not limited to communications made in the context of litigation or even a specific dispute," the attorney-client privilege "is narrowly construed." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980). Its purpose is "to protect a client's confidences to his or her attorney, thereby encouraging an open and honest relationship between the client and the attorney." *Vento v. IRS*, 714 F. Supp. 2d 137, 151 (D.D.C. 2010) (citing *Coastal States Gas Corp.*, 617 F.2d at 862). Toward that end, "the privilege 'protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege.'" *Id.* (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)). In the FOIA context the attorney-client privilege "is not an all-purpose FOIA evasion mechanism." *Pub. Emps. For Env't Resp. v. EPA*, 211 F. Supp. 3d 227, 230 (D.D.C. 2016).

Moreover, "a 'fundamental prerequisite of the privilege' is confidentiality both at the time of the communication and maintained since.'" *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 154 (D.D.C. 2013) (quoting *Coastal States Gas Corp.*, 617 F.2d at 863). To meet this "fundamental prerequisite," the agency bears the burden of showing that it did not share the withheld information with third parties. *Judicial Watch, Inc.*, 926 F. Supp. 2d at 154. Moreover, in assessing the applicability of the privilege, courts should consider whether recognizing the privilege will serve its purposes. *Coastal States Gas Corp.*, 617 F.2d at 863.

In the government context, "DOJ must also establish that securing legal advice was a 'primary purpose' of the agency's communication." *Cause of Action Institute v. U.S. Dep't of Justice*, 330 F. Supp. 3d 336, 347 (D.D.C. 2018) (citing *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 759-60 (D.C. Cir. 2014)). As a result, "the privilege does not extend to a 'government attorney's advice on political, strategic, or policy issues, valuable as it may [be].'" *Id.* (citing *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 926 F. Supp. 2d at 144-45 (quoting *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998)).

Here OLC claims that disclosing the titles of 23 opinions would, by identifying their subject matter, "reveal[] at least some information about the client's confidential request for legal advice" as well in some instances "the specific subject or question on which the client sought the Office advice." Def.'s Mem. Supp. Summ. J. ("D's Mem.") at 5. The attorney-client privilege, however, does not protect "some" unidentified type of "information" having some unidentified relationship to an attorney-client confidence. Moreover, that disclosing the several-word titles would, in and of itself, reveal actual client confidences is both counter-factual and speculative. It also requires a construction of the attorney-client privilege that runs counter to the narrow construction afforded the privilege in contexts like that presented here: outside litigation or a

specific dispute. *See Coastal States Gas Corp.*, 617 F.2d at 862. Simply stated, the titles reveal neither confidential facts divulged by a client to OLC nor any advice from OLC based on confidential facts supplied by a client.

A review of some of the unredacted opinion titles OLC has provided that are set forth in Exhibit A confirms that at most they posit a question that OLC has been asked to answer. For example, Item 9 on the list of opinions from January 2010 to December 2010 is entitled: "Memorandum of the Department of Defense to Acquiesce or Nonacquiesce in Witt v. Department of the Air Force, 527 F.3d 806 (9th Cir. 2008) (Paisner)." Similarly, Item 9 in the List of OLC opinions from January 2018 through December 2018, which was sent to the Counsel to the President, bears the title: "Memorandum re Authority to Withdraw from the North American Free Trade Agreement." Identifying the subjects of these and the other unredacted titles OLC has provided reveals nothing reasonably characterized as confidential client communications, the core of what the attorney-client privilege protects. DOJ has provided no basis to conclude the withheld titles differ substantively from those it has produced.

Nor does caselaw confirming the application of the attorney-client privilege to OLC opinions change this conclusion. OLC cites several decisions concluding the attorney-client privilege protects OLC *opinions*, D's Mem. at 6-7, because "they embody confidential legal advice given by OLC to other components of the Executive Branch." *CREW v. Dep't of Justice*, 298 F. Supp. 3d 151, 155 (D.D.C. 2018), *aff'd*, 922 F.3d 480 (D.C. Cir. 2019). OLC opinion *titles*, on the other hand, have no such attributes and at most identify the purpose for which an agency sought OLC's advice. But that purely factual information falls outside the scope of the privilege. As such, this caselaw is inapposite.

The caselaw on which DOJ relies in fact confirms that titles, unlike the opinions themselves, fall outside of the attorney-client privilege. For example, in *ACLU v. Nat'l Sec. Agency*, 925 F.3d 576, 589 (2d Cir. 2019), cited in D's Mem. at 7, the court stressed that the attorney-client privilege "protects communications rather than information." OLC titles comprise the latter category, as reinforced by the OLC opinion at issue in that case. There DOJ withheld the body of the requested OLC opinion pursuant to the attorney-client privilege. In justifying this withholding, the agency provided the court with a wealth of information about the OLC opinion's substance. The opinion at issue was titled Re: Review of the Legality of the STELLAR WIND Program," and it:

> examines a "highly classified and strictly compartmented program of electronic surveillance" authorized by President George W. Bush in response to the attacks of September 11, 2001. The memorandum reviews the program's history and analyzes its legality under EO 12,333, applicable statutes, and the United States Constitution.

*Id.* at 586 (citation omitted). Unquestionably the several-word titles at issue here convey far less information.

Moreover, the typical *Vaughn* index or privilege log would, at a minimum, identify the title or subject matter of a document claimed to be protected by the attorney-client privilege, if not this level of detail. In civil litigation a party claiming a privilege must, in producing a privilege log:

> state the basis upon which the privilege is claimed, state the subject matter, number of pages, author, date created, and the identity of all persons to whom the original or nay copies of the document were shown or provided.

*Direct of OTS v. Ernst & Young*, 795 F. Supp. 7, 11-12 (D.D.C. 1992). *See also Loftin v. Bande*, 258 F.R.D. 31, 33 (D.D.C. 2009) (descriptions of documents asserted to be protected by the attorney-client privilege deemed "insufficient because they do not specify the subject matter").

This requirement tracks the Federal Rules of Civil Procedure. Rule 26(b)(5)(ii), for example, requires litigants claiming privileges to "describe the nature of the documents, communications, or tangible things not produced or disclosed in a way that "will enable other parties to assess the claim." Rule 45(d)(2)(A) of the Federal Rules of Civil Proceudre requires a party invoking a privilege in response to a subpoena to "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."

Similarly, in FOIA litigation agencies must provide a "Detailed Justification" for each withholding rather than "conclusory and generalized allegations of exemptions[.]" *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973). *See also EPA v. Mink*, 410 U.S. 73, 93 (1973) (need for "detailed affidavits" to satisfy the court "that the documents fall clearly beyond the range of material [subject to disclosure]."). Those details, at a minimum, would include the subject matter of the document at issue, the very information the OLC titles convey.

Further, DOJ also has failed to demonstrate that it has not shared the withheld titles with anyone outside the claimed attorney-client relationship. To properly assert the attorney-client privilege the agency must show that it did not share the withheld information with third parties. *Judicial Watch, Inc.*, 926 F. Supp. 2d at 154. Here, however, DOJ admits the lists in question were "created by a staff assistant for use within OLC as tables of contents[.]" Anderson Decl. ¶ 16. Not only was the staff assistant outside of the claimed attorney-client relationship for each of the 23 OLC opinion titles at issue, but this purpose is completely independent of the purportedly privileged matter for which the documents were created in the first place, undermining DOJ's assertion of the attorney-client privilege.

Moreover, applying the attorney-client privilege to the 23 OLC titles at issue would not serve the purpose of the privilege. The privilege "'protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.'" *Coastal States Gas Corp.*, 617 F.2d at 862 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)). Here, however, the agencies seeking OLC's views had no choice in bringing their specific issues or questions to OLC given OLC's statutorily imposed responsibility to render advice and opinions on legal questions at the request of either the President or agency heads. 28 U.S.C. §§ 511-12. Similarly, to the extent any of the 23 opinions at issue resolve inter-agency disputes the agencies in question were required to bring the dispute to OLC by virtue of Exec. Order No. 12,146, § 1-401, reprinted as amended in 28 U.S.C. § 509 (1988). Moreover, in those cases, OLC is not acting as an attorney for either agency, but more like a judge placing its opinions beyond the reach of the attorney-client privilege.

For all these reasons, DOJ has not carried its burden of proving the withheld titles are subject to the attorney-client privilege.

### B. Disclosing The 23 Withheld Titles Would Not Reveal Information Protected By The Deliberative Process Privilege.

OLC also relies on the deliberative process privilege to withhold the 23 opinion titles at issue. To satisfy the deliberative process privilege DOJ must meet two requisites: (1) the information it seeks to protect must be predecisional, and (2) the information must be deliberative. *See, e.g.*, *Soghoian v.U.S. Dep't of Justice*, 885 F. Supp. 2d 62, 73–74 (D.D.C. 2012).

A document meets the predecisional requirement if "it was generated before the adoption of an agency policy," and it is deliberative if it "reflects the give-and-take of the consultative process." *Coastal States Gas Corp.*, 617 F.2d at 866. The privilege "shields documents that

reflect an agency's preliminary thinking about a problem, as opposed to its final decision about it." *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021). But the deliberative process privilege does not shield "documents that simply state or explain a decision the government has already made[.]" *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). Nor does it extend to "purely factual" material "unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." *Id.*

In this way the privilege differentiates between "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency"—which fall within the privilege, *id.* at 866—and "documents which explain an agency's final decision"—which must be disclosed as non-privileged." *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988). Further, "even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal States Gas Corp.*, 617 F.2d at 866.

The several-word titles OLC withheld here fall far short of meeting the requirements for the privilege. OLC describes the redacted information as necessary to "protect the identity of a client and the subject matter of the advice sought and provided." Anderson Decl. ¶ 22. In at least some cases the titles reference "particular statutory provisions and subparts." *Id.* Most significantly, like the documents at issue in *Coastal States Gas Corp.*, "[t]here is nothing subjective or personal about [them] . . . they are simply straightforward explanations" of the subject of the opinions. 617 F.2d at 868. They are factual in nature and "bear little resemblance to the types of documents intended to be protected under the deliberative process privilege." *Id.* at

867. At most the titles "simply state or explain a decision the government has already made," and as such they fall outside the protection of the deliberative process privilege. *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997).

In short, the titles as described by OLC reflect absolutely nothing about the "back and forth exchange of ideas, constructive feedback, and informal debate," the hallmarks of a deliberative document. *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th at 364. Disclosing their contents would expose nothing about the agency's decisionmaking process or "stifle honest and frank communication within the agency," *Id.* at 866, the interests the privilege was intended to protect.

In arguing to the contrary, DOJ offers a tortured construction of the titles as somehow implicitly revealing the deliberations of the unidentified decisionmaker (who may or may not be the sender or the recipient of the opinion) because they convey the importance of the questions addressed in the opinions. *See* D's Mem. at 9. This ignores the distinction between the subject of any advice OLC provided—which is not protected—and the advice itself, which more naturally may fall within the scope of the deliberative process privilege. DOJ also attempts to bootstrap on its attorney-client privilege claims, arguing that the titles are protected by the deliberative process privilege for identical reasons. *Id.* But the two privileges serve very different interests and have very different prerequisites.

Moreover, as with the attorney-client privilege on which OLC relies, any privilege log or *Vaughn* index justifying OLC's assertion of the deliberative process privilege would have to contain the very information OLC seeks to protect. Indeed, in *Coastal States Gas Corp.* the D.C. Circuit deemed a *Vaughn* index insufficient to support a deliberative process privilege even though the index identified "who wrote the memorandum, to whom it was addressed, its date,

and a brief description of the memorandum[.]" 617 F.2d at 861. The court deemed this index "patently inadequate." *Id.*

Here, DOJ has failed to provide even this minimal information. Instead, it merely describes the lists as containing "a title or brief description of the document," Anderson Dec. ¶ 18. This too is "patently inadequate." Indeed, this hyper-generalized description would apply to every title of every memo ever written by anyone.

DOJ also relies on caselaw concluding that the deliberative process privilege protects OLC advice. *See* D's Mem. at 9-10. But once again DOJ fails to differentiate between the advice memorandum itself and its title, or between the large number of titles it disclosed and the 23 it withheld. Moreover, the cited cases undermine not support DOJ's claims. In *Elec. Frontier Found. v. Dep't of Justice*, 739 F.3d 1 (D.C. Cir. 2014) ("*EFF v. FBI*"), cited in D's Mem. at 10, the D.C. Circuit concluded the deliberative process privilege protected an OLC opinion that DOJ's declarant Paul Colborn, in defending the withholding, described as followed:

> a January 8, 2010 Memorandum for Valerie Caproni, General Counsel of the[FBI] from David J. Barron, Acting Assistant Attorney General for the Office of Legal Counsel . . prepared in response to a November 27, 2009 opinion request from the FBI's General Counsel . . . in order to obtain OLC advice that would assist FBI's evaluation of how it should respond to a draft Report by the Office of Inspector General of the Department of Justice . . . in the course of a review by the OIG of the FBI's use of certain investigatory procedures.

Declaration of Paul P. Colborn at ¶ 9, *EFF v. FBI*, Jt. Appendix, ECF No. 11-4. A footnote to this description identifies the OIG report at issue as concerning the FBI' use of exigent letters and other information requests for telephone records." *Id.* This level of detail concerning the nature and contents of the withheld opinion stands in stark contrast to the information DOJ has provided about the withheld titles at issue here.

In sum, revealing the titles of the 23 documents at issue would reveal nothing about the agency's deliberations that the deliberative process is intended to protect.

**C. Disclosing The Withheld Title Of Document 7 Would Not Reveal Information Protected By The Attorney Work-Product Doctrine.**

DOJ has withheld one document dating back to 2010 that it baldly asserts was prepared by attorneys for litigation and therefore falls within the protection of the attorney work-product doctrine. D's Mem. at 12. This reliance is misplaced as the doctrine does not provide the sweeping protection DOJ suggests it does and DOJ, in any event, has not met its burden of proof.

To qualify for the attorney work-product doctrine a document must have been prepared in anticipation of litigation. *Hickman v. Taylor*, 329 U.S. 495, 509-10 (1947). The "'primary motivating purpose behind the creation of a document' must be to aid in possible future litigation." *Public Citizen, Inc. v. Dep't of State*, 100 F. Supp. 2d 10, 30 (D.D.C. 2000) (quoting *Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C. 1982)). Further, the document must "reflect[] the attorney's focus in a meaningful way." *FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 151 (D.C. Cir. 2015). The work-product doctrine applies only once there is "some articulable harm, likely to lead to litigation[.]" *Coastal States Gas Corp.*, 617 F.2d at 865.

"[N]ot every item which may reveal some inkling of a lawyer's mental impressions . . . is protected as opinion work product." *Id.* The document title at issue here is just such an item. While the memorandum itself may be protected by the attorney work-product doctrine, its title reflects absolutely nothing about a lawyer's mental impressions. Allowing DOJ to keep the title secret would not serve the purposes for which the work-product doctrine was intended.

Moreover, DOJ has not met its burden of proof. In justifying the withholding of the title on work-product grounds DOJ offers only the generalized claim that the document was prepared

"in connection with ongoing litigation." *See* Anderson Decl. at ¶ 25. This provides this Court insufficient evidence from which to conclude the privilege assertion is proper. *See* Fed. R. Civ. P. 26(b)(5)(ii). Under comparable circumstances the court in *Public Citizen, Inc.* deemed an agency's proffered declaration "not sufficiently specific" because it was "far too general, providing no indication as to the recipients of the document, the posture of the case, and subject matter of the information withheld." 100 F. Supp. 2d at 30. As a result, the agency declaration did not permit the court "to determine whether the 'primary motivating purpose' behind the creation of the [document] was to aid in future litigation." *Id.* Here, the Anderson Declaration also lacks all that information. And the generalized statement DOJ's declarant offers here, like the declarant's statement in *Public Citizen*, *Inc* that the withheld document was "'related to' pending litigation," is simply "insufficient." *Id.* The Anderson Declaration does not permit the Court to ascertain the "primary motivating purpose" behind the OLC memorandum's creation and place it within the scope of the work-product doctrine.

### D. Disclosing The Withheld Titles Of Two Documents Would Not Reveal Information Protected By The Presidential Communications Privilege.

The presidential communications privilege protects communications by both a president and "presidential advisers in the course of preparing advice for the President[.]" *In re Sealed Case*, 121 F.3d at 751. It applies:

> only to communications authored or solicited and received by those members of an immediate White House adviser's staff who have broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate.

*Id.* at 752. Moreover, as the court in *In re Sealed Case* cautioned, "the presidential communications privilege should be construed as narrowly as is consistent with ensuring that the confidentiality of the President's decisionmaking process is adequately protected. Not every

person who plays a role in the development of presidential advice, no matter how remote and removed from the President, can qualify for the privilege." *Id.*

Construing the presidential communications privilege to apply to the titles of OLC opinions conflicts with the narrow compass urged by the D.C. Circuit. Whatever the need to protect the confidentiality of deliberations and advice given to the President or the President's top aides, that need does not extend to the opinion titles, which in and of themselves contain no deliberations or advice. As described by OLC the titles simply contain "the subjects of OLC's legal advice[.]" Anderson Decl. ¶ 11. Their revelation would cause no harm to the ability of OLC to freely and effectively examine "creative and sometimes controversial legal arguments[.]" *Id.*

That the presidential communication privilege covers advice OLC offers to the President and presidential advisors does not alter this conclusion. In fact, the cases DOJ cites in support of this proposition highlight the clear difference between the substance of an OLC memorandum or opinion containing that advice and its title. In *Protect Democracy Project, Inc. v. U.S. Dep't of Justice*, Civ. A. No. 20-172 (RC), 2021 WL 1167094, *3 (D.D.C. Mar. 26, 2011), cited in D's Mem. at 15, OLC defended its reliance on the presidential communications privilege to withhold its advice by providing the subject of the OLC opinion at issue, specifically legal advice about airstrikes on an Iranian general. *Id.* Similarly, in *Advocates for the West v. Dep't of Justice*, 331 F. Supp. 3d 1150, 1165 (D. Idaho 2018), the court considered whether the presidential communications privilege applied to 12 legal memoranda concerning "the President of the United States' authority to alter national monuments under the Antiquities Act of 1906." *Id.* Revealing the subject of the memoranda—the very same information embodied in the OLC titles at issue here—was necessary to determine the applicability of the privilege and risked no disclosure of privileged information. And in *Elec. Priv. Info. Ctr. v. Dep't of Justice*, 584 F. Supp.

2d 65, 81 (D.D.C. 2008), also cited by DOJ, the court was addressing the applicability of the presidential communications privilege to "requests for advice regarding foreign intelligence collection activities with respect to which the President was the ultimate decision-maker." *Id.* In describing the documents at issue, the court went even further, explaining the plaintiffs there were "seeking the release of agency records regarding the former policy of the Bush Administration to conduct, under certain circumstances, surveillance of domestic communications without the prior authorization of the Foreign Intelligence Surveillance Court." *Id.* at 69. As with the other privileges on which DOJ relies here, the minimal information contained in the OLC opinion titles falls outside the claimed privilege and, in any event, is the type of information routinely required to assess the propriety of a presidential communication privilege claim.

DOJ's presidential communications privilege claim must also fail for the separate reason that DOJ has failed to identify the level and nature of the officials for whom this advice was provided. The Anderson Declaration says nothing whatsoever about them, referring only generically to the need to protect OLC's advice "to the President's advisers[.]" Anderson Decl. ¶ 31. But the Declaration offers no further description including, most critically, their level of responsibility and relationship to the President. The privilege requires more.

## III. DOJ HAS FAILED TO SATISFY THE FORESEEABLE HARM REQUIREMENT.

The 2016 FOIA Improvement Act codified the "foreseeable harm" standard established administratively in 2009 by then-Attorney General Holder. *Rosenberg v. U.S. Dep't of Defense*, 342 F. Supp. 3d 62, 72 (D.D.C. 2018). The FOIA now provides that "[a]n agency shall . . . withhold information under this section only if . . . (I) the agency reasonably foresees that

disclosure would harm an interest protected by an exemption described in subsection (b); or (II) disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i).

In determining whether disclosure would harm an "exemption-protected interest," the "information may not be withheld 'merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears.'" S. Rep. No. 114-4, at 7 (quoting White House Memorandum for the Heads of Executive Departments and Agencies, 74 Fed. Reg. 4683 (Jan. 21, 2009)). The addition of the foreseeable harm requirement ensures that agencies "comply" not only "with the letter of" the FOIA, but also "the spirit of the law." *Center for Investigative Reporting v. U.S. Custom & Border Prot.*, 436 F. Supp. 3d 90, 104 (D.D.C. 2019) (quoting 162 Cong. Rec. H3717 (2016)). It also reflects Congress' judgment that "[n]ondisclosure should never be based on an effort to protect the personal interests of Government officials at the expense of those they are supposed to serve." S. Rep. No. 114-4, at 7.

The D.C. Circuit in *Reporters Committee* emphasized that "the foreseeable harm requirement 'impose[s] an independent and meaningful burden on agencies.'" 3 F.4th at 369 (citing *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106). As applied specifically to the deliberative process privilege this burden requires more than "[a] perfunctory state[ment]," "general explanations and boiler plate language[.]" *Id.* (citations and quotations omitted). Instead, it requires:

> a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward. Naturally, this inquiry is context specific.

*Reporters Comm.*, 3 F.4th at 370. *See also Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106 (agency must "identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensure from disclosure of the withheld materials" and "connect[] the harms in [a] meaningful way to the information withheld." (quotation and citation omitted)).

Moreover, "just mouthing the generic rationale for the deliberative process privilege itself," as DOJ has done here for each of the asserted privileges, fails to satisfy the statutory foreseeable harm requirement. *Reporters Comm.*, 3 F.4th at 370. DOJ summarizes the harm as "chill[ing] or deter[ing] the decision makers from engaging in the candid and frank discussions that are so important and necessary when resolving legal issues." D's Mem. at 11. But this proffered justification merely parrots "the generic rationale for the deliberative process itself, *Reporters Comm.*, 3 F. 4th at 370, and completely lacks the "focused and concrete demonstration" that the specific types of opinion titles at issue "will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.* Nowhere does DOJ credibly explain why harm would flow from the disclosure of, for example, the title of a 14-year-old document DOJ has withheld pursuant to the attorney work-product doctrine. For this and all the redacted titles DOJ relies instead on a bald assertion of harm, unsubstantiated by specific evidence.

Nor has DOJ's declarant provided the necessary "context or insight into the *specific* decision-making processes or deliberations at issue, and how they *in particular* would be harmed by disclosure." *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 107 (emphasis added) (quotation and citation omitted). Instead, she too parrots the generic rationale for the claimed privileges, Anderson Decl. ¶¶ 28-31, failing to link those harms to the specific documents at

issue. Indeed, the fact that OLC routinely releases opinion titles undermines its claim that releasing the 23 titles at issue here would cause foreseeable harm within the meaning of the FOIA.

By contrast, revealing the titles serves a compelling public interest. OLC plays a critical role in determining the final legal positions of the executive branch, and its opinions may shield government actors from criminal liability. But without the titles of OLC opinions the public and Congress have no way to access those opinions either through the FOIA or as part of the congressional oversight function.

Finally, the foreseeable harm standard warrants strict adherence in the present context because Congress, in adopting this amendment to FOIA, "was especially concerned" about agencies over-withholding records under "Exemption 5 and the deliberative process privilege." *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 104; see H.R. Rep. No. 114-319, at 10 (noting that Exemption 5 has been singled out as a particularly problematic exemption" and that the "deliberative process privilege is the most used privilege and the source of the most concern regarding overuse"); S. Rep. No. 114-4, at 3 (noting "growing and troubling trend towards relying on . . . discretionary exemptions to withhold large swaths of Government information").

## IV. IF THE COURT HAS REMAINING CONCERNS ABOUT THE APPLICABILITY OF THE CLAIMED EXEMPTIONS IT SHOULD EXAMINE THE WITHHELD DOCUMENTS *IN CAMERA*.

If this Court is not prepared to order disclosure of DOJ's withholdings on the current record, it should as an appropriate next step review those withholdings *in camera* to determine whether they satisfy the criteria for withholding under Exemption 5. *See Rosenberg v. U.S. Dep't of Defense*, 342 F. Supp. 3d 62, 79 (D.D.C. 2018) (court conducted *in camera* review to determine if DOJ met the foreseeable harm requirement). The small number of documents at

issue makes *in camera* review a preferred option if the Court has remaining questions about the propriety of DOJ's withholdings. *See Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996) (number of withheld documents is an "important[] factor" in deciding whether to conduct *in camera* review). Accordingly, the Court should exercise its broad discretion and review the 23 withheld titles *in camera*. *See Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978) (per curiam) ("A judge has discretion to order *in camera* inspection on the basis of an uneasiness, on a doubt that he wants satisfied before he takes responsibility for a de novo determination . . . The ultimate criterion is simply this: Whether the district judge believes that *in camera* inspection is needed in order to make a responsible de novo determination on the claims of exemption.").

## CONCLUSION

For the foregoing reasons the Court should deny Defendant's motion for summary judgment and grant Plaintiff's cross-motion for summary judgment.

Respectfully submitted,

*/s/ Anne L. Weismann*
Anne L. Weismann
(D.C. Bar No. 298190)
5335 Wisconsin Ave., N.W., Suite 640
Washington, D.C. 20015
Phone: 301-717-6610
Weismann.anne@gmail.com

Dated: March 27, 2024

*Attorney for Plaintiff*