UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PROJECTION ON GOVERNMENT OVERSIGHT, ) ) ) )| |
| Plaintiff, ) )| |
| v. )| Civil Action No. 20-1415 |
| ) DEPARTMENT OF JUSTICE OFFICE OF LEGAL COUNSEL, ) ) )| |
| Defendant. )| |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

JOSHUA ONTELL
VA Bar #92444
Assistant United States Attorney
601 D St., N.W.
Washington, D.C.  20530
(202) 252-7706

*Attorneys for the United States of America*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................ 5

ARGUMENT ............................................................................................................................. 6

   I.   Plaintiff's Arguments Regarding the Application of Exemption 5 Lack Merit.............. 6

     A.   The Attorney-Client Privilege Applies. ................................................................. 6

     B.   Plaintiff's Argument Regarding the Deliberative Process Privilege Fails................ 10

     C.   The Attorney Work Product Doctrine Applies ........................................................ 11

     D.   The Presidential Communications Privilege Applies ............................................... 12

   II.   Plaintiff has Failed to Respond Meaningfully to Defendant's Foreseeable Harm Argument. .......................................................................................................................... 13

     A.   Foreseeable Harm Under the Deliberative Process Privilege ..................................... 14

     B.   Foreseeable Harm Under the Attorney-Client Privilege............................................ 15

     C.   Foreseeable Harm Under the Work-Product Privilege ............................................. 16

     D.   Foreseeable Harm Under the Presidential Communications Privilege....................... 17

   III.   *In Camera* Review is Unwarranted.............................................................................. 17

CONCLUSION........................................................................................................................... 18

# TABLE OF AUTHORITIES

Cases

*Advocates for the West v. Dep't of Justice,*
  331 F. Supp. 3d 1150 (D. Idaho 2018) ................................................................ 13

*Am. First Legal Found. v. U.S. Dep't of Agric.,*
  No. CV 22-3029 (BAH), 2023 WL 4581313 (D.D.C. July 18, 2023) .............................. 15, 17

*Am. Mgmt. Servs., LLC v. Dept. of Army,*
  842 F. Supp. 2d 859 (E.D. Va. 2012) .................................................................. 5

*Bryant v. Gates,*
  532 F.3d 888 (D.C. Cir. 2008) .......................................................................... 13

*Campaign for Accountability v. United States Dep't of Just.,*
  No. CV 16-1068 (JMC), 2024 WL 1701640 (D.D.C. Apr. 19, 2024) .................................. 9

*Cause of Action Inst. v. United States Dep't of Just.,*
  330 F. Supp. 3d 336 (D.D.C. 2018) .............................................................. 7, 12, 15

*Coastal States Gas Corp. v. Dep't of Energy,*
  617 F.2d 854 (D.C. Cir. 1980) ....................................................................... 9, 10

*Comm. for Freedom of the Press v. Fed. Bureau of Investigation,*
  3 F.4th 350 (D.C. Cir. 2021) .......................................................................... 15

*Cox v. Nielsen,*
  Civ. A. No. 16-1966 (TNM), 2019 WL 1359806 (D.D.C. Mar. 26, 2019) ............................. 13

*Ctr. for Auto Safety v. EPA,*
  731 F.2d 16 (D.C. Cir. 1984) .......................................................................... 17

*Curran v. DOJ,*
  813 F.2d 473 (1st Cir. 1987) ........................................................................... 5

*Frontier Found. v. Dep't of Justice,*
  739 F.3d 1 (D.C. Cir. 2014) .............................................................. 10, 11, 12, 14

*Hayden v. Nat'l Sec. Agency,*
  608 F.2d 1381 (D.C. Cir. 1979) ........................................................................ 18

*Johnson v. Panetta,*
  953 F. Supp. 2d 244 (D.D.C. 2013) .................................................................... 13

*Leopold v. Dep't of Justice,*
  No. 19-cv-2796, 2021 WL 3128866 (D.D.C. July 23, 2021) ............................................ 15

*N.Y. Rehab. Care Mgmt., LLC v. NLRB,*
  506 F.3d 1070 (D.C. Cir. 2007) ........................................................................ 13

Plaintiff cites to *ACLU v. Nat'l Sec. Agency,*
  925 F.3d 576 (2d Cir. 2019) ......................................................................... 7, 9

*Protect Democracy Project, Inc. v. U.S. Dep't of Justice,* Civ. A.,
  No. 20-172 (RC), 2021 WL 1167094 (D.D.C. Mar. 26, 2011) ........................................... 12

*Pub. Citizen, Inc. v. United States Dep't of Educ.,*
  388 F. Supp. 3d 29 (D.D.C. 2019) ................................................................. 5, 6, 7

*Ray v. Turner,*
  587 F.2d 1187 (D.C. Cir. 1978) ........................................................................ 17

*SafeCard Servs., Inc. v. SEC,*
  926 F.2d 1197 (D.C. Cir. 1991) ......................................................................... 6

*United States v. Kovel,*
    296 F.2d 918 (2d Cir. 1961) ................................................................................................ 8
*United States v. TDC Mgmt. Corp.,*
    827 F.3d 1127 (D.C. Cir. 2016) .......................................................................................... 13
*Wannall v. Honeywell, Inc.,*
    775 F.3d 425 (D.C. Cir. 2014) ...................................................................................... 13, 14
*Wilderness Workshop v. United States Dep't of Agric.,*
    No. CV 21-2108 (JMC), 2023 WL 5672578 (D.D.C. Sept. 1, 2023) ................................... 16
*Wye Oak Tech., Inc. v. Republic of Iraq,*
    No. 1:10-CV-01182-RCL, 2021 WL 11670847 (D.D.C. June 22, 2021) ................................ 6
*Young v. Taylor,*
    466 F.2d 1329 (10th Cir. 1972) ............................................................................................ 8

Statutes

28 U.S.C. § 509 (1988) .............................................................................................................. 8
28 U.S.C. §§ 511-12 ................................................................................................................. 8
5 USC 552(a)(2)(A) .................................................................................................................. 9

## PRELIMINARY STATEMENT

"POGO contests only the Exemption 5 withholdings of the titles of 23 listed [Office of Legal Counsel] opinions." ECF No. 55, Pl.'s Resp at 4. But Plaintiff's opposition rests on the thinnest of reeds: its argument that Office of Legal Counsel ("Office") opinion titles "reveal no privileged information." *Id.* at 1. Plaintiff asserts that titles "comprise . . . what the agency would have to disclose in a privilege log or *Vaughn* index." *Id.* But by Plaintiff's logic, the mere requirement to file a privilege log implies non-disclosure and would, if the information is haphazardly revealed by the log or *Vaughn* index, pierce all privileges under the scope of FOIA Exemption 5. *Curran v. Dep't of Just.*, 813 F.2d 473, 476 (1st Cir. 1987) (agency should not be forced "to resort to just the sort of precise description which would itself compromise the exemption"); *Am. Mgmt. Servs., LLC v. Dep't of Army*, 842 F. Supp. 2d 859, 874 (E.D. Va. 2012) (finding that "descriptive information need not be 'so detailed that it would serve to undermine the important deliberative processes protected by Exemption 5.'").

Here, the Department of Justice (the "Department") maintains that when the titles themselves contain privileged information, they are protected from disclosure. This is especially so under the attorney-client privilege, where, as here, titles reveal the motivation for seeking legal services or the nature of the legal inquiry. *See Pub. Citizen, Inc. v. Dep't of Educ.*, 388 F. Supp. 3d 29, 42–43 (D.D.C. 2019) (finding that email subject lines were properly withheld because they would reveal the nature of the legal inquiry or the client's motivation). Because in this instance Exemption 5 privileges are applicable to titles, this Court should grant the Department's motion for summary judgment and deny Plaintiff's cross-motion for summary judgment.

**ARGUMENT**

**I.   Plaintiff's Arguments Regarding the Application of Exemption 5 Lack Merit.**

In opposition, Plaintiff raises several generic challenges to Defendant's detailed explanation of the withholdings at issue. Each of Plaintiff's assertions fails to raise a material issue of fact.

**A.   The Attorney-Client Privilege Applies.**

Despite Plaintiff's protestations otherwise, the attorney-client privilege applies to titles. It is undisputed that the "general purpose of work performed" is not privileged. *Pub. Citizen,* 388 F. Supp. 3d at 42. But it is equally inarguable that the motive for seeking advice *or* the specific nature of the legal inquiry is privileged. *Id*. at 42-43. Even some otherwise "unprivileged" fact may be privileged if it shows "the substance of, or a client's . . . reasons for seeking, legal advice." *Wye Oak Tech., Inc. v. Republic of Iraq*, Civ. A. No. 10-1182 (RCL), 2021 WL 11670847, at *2 (D.D.C. June 22, 2021).

Here, Defendant's declaration establishes that the privilege applies. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) ("[a]gency affidavits are accorded a presumption of good faith"). The redacted titles are "more than just general subjects." ECF No. 54-4, Anderson Decl. ¶ 22. They identify "legal questions presented" with specificity, including "reference to particular statutory provisions and subparts." *Id.*  The titles reveal the client's "confidential request for legal advice on a particular matter at a particular time." *Id*. ¶ 23. They often "disclose potential decisions under consideration." *Id*. ¶ 22. Even where some information contained in titles are arguably not privileged, "[w]hen paired with the identity of the client and the already-disclosed dates, disclosure . . . would reveal a particular client's confidential request for legal advice." *Id*. In sum, the titles: (1) clearly reveal the specific nature of the client's legal inquiry, and (2) would disclose confidential communications. Since the government has

shown entitlement to the attorney-client privilege, the titles fall squarely within Exemption 5. *See Pub. Citizen,* 388 F. Supp. 3d at 42-43; *see also Cause of Action Inst. v. Dep't of Just.*, 330 F. Supp. 3d 336, 350-351 (D.D.C. 2018) (finding client identity is protected where the identity is sufficiently intertwined with client confidences).

    1.    The *ACLU* Case Cited by Plaintiff is Inapposite.

Plaintiff cites to *ACLU v. National Security Agency*, 925 F.3d 576, 589 (2d Cir. 2019), for the proposition that Office titles are not protected by the attorney-client privilege. Pl.'s Resp. at 10. Plaintiff argues that in that case, the Department provided the title and substance of an opinion to justify withholding the body of the opinion. *Id*. Therefore, in Plaintiff's estimation, titles are not protected by attorney-client privilege. *Id*.

*ACLU*, however, is distinguishable from the instant matter. In *ACLU*, the Office had long ago made a discretionary release of significant sections of that memorandum, preserving redactions only over the material that it and its clients had determined still required protection. *See* https://www.justice.gov/sites/default/files/pages/attachments/2014/09/19/may_6_2004_goldsmith_opinion.pdf (last accessed June 18, 2024) (showing redacted section headings III.A through IV.D on page 2). In that instance, releasing the title of the document did not disclose details of the underlying advice still requiring protection. *Id*. The Office did redact several subject headings in the opinion because those—like some of the titles here—would have revealed privileged information about the nature of the advice. *Id*. To be clear, and as Plaintiff is aware, Defendant does not take the position that all titles are privileged. ECF No. 55-1, Defendant's Production of Titles. Indeed, Defendant has provided Plaintiff with most titles and has properly redacted only those titles that are privileged and for which it has determined that harm from disclosure is reasonably foreseeable. *Id*. Defendant here, as in *ACLU*, made a considered decision and has only withheld information when necessary.

2.      Sharing Information With a Staff Assistant Fails to Negate Attorney-
        <u>Client Privilege.</u>

Plaintiff's claim that Defendant shared information with third parties is false. Defendant's

declaration plainly states that these titles have not been shared in a manner that would affect the

privilege. ECF No. 54-4, Anderson Decl. ¶ 34. Further, a staff assistant accessing the titles is not

a waiver of the privilege because the privilege extends to an attorneys' clerks and other agents.

*See, e.g.*, *Young v. Taylor,* 466 F.2d 1329, 1332 (10th Cir. 1972); *United States v. Kovel*, 296 F.2d

918, 921 (2d Cir. 1961).

3.      Plaintiff's Averment That Agencies "Had No Choice in Bringing Their
        Specific Questions" to the Office Fundamentally Misunderstands the
        <u>Purpose of the Attorney Client Privilege.</u>

Plaintiff's argument that the attorney-client privilege does not apply here because agencies

seeking the Office of Legal Counsel's views were required to do so is unavailing. In making that

argument, Plaintiff cites to 28 U.S.C. §§ 511-12. Pl.'s Resp. at 12.  Section 511, states that the

Attorney General shall give his advice and opinion on questions of law when required by the

President. Section 512 states that the head of an executive department may require the opinion of

the Attorney General on questions of law arising in the administration of his department. *See*

28 U.S.C. §§ 511-12. Clearly, nothing in Sections 511 and 512, requires agencies or the President

to seek legal counsel with the Office.

Regarding interagency disputes, the Executive Order Plaintiff does require agencies to go

to the Attorney General prior to proceeding to court. Exec. Order No.12,146, § 1-401-1-402,

reprinted as amended in 28 U.S.C. § 509 (1988). The requirement is triggered only as a last resort

before litigation in court; agencies are free to pursue other avenues of dispute resolution

beforehand.

Nevertheless, Defendant wants to make the Court aware of *Campaign for Accountability v. Department of Justice*, Civ. A. No. 16-1068 (JMC), 2024 WL 1701640 (D.D.C. Apr. 19, 2024). In that matter, the Court ruled that Office of Legal Counsel opinions resolving interagency legal disputes must be disclosed under the affirmative disclosure provision of 5 U.S.C. § 552(a)(2)(A), on the theory that they are "final opinions . . . made in the adjudication of cases." *Id.* at 5-6. The government has noticed an appeal of that decision. Notice of Appeal, *Campaign for Accountability*, *supra*, ECF No. 70.

In making its argument about the alleged obligation to seek Office of Legal Counsel advice, Plaintiff quotes *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980)) for the proposition that "[t]he privilege 'protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.'" Pl.'s Resp. at 12. But this argument misses the mark. First, the privilege functions to encourage attorneys and their clients to communicate fully and frankly and thereby promote broader public interests in the observance of law and administration of justice. *ACLU*, 925 F.3d at 589.  "[T]he frank exchange between government officials and their attorneys serves as a crucial, and maybe the only, safeguard in ensuring the legality of government action." *Id*.  Thus, the attorney client privilege is meant to encourage confidential communications for the purpose of obtaining legal advice.

In *Coastal States*, the Court was simply saying that communications between auditors and agency counsel were not privileged where the communications were not conveying private information and the communications did not seek to provide counsel. *Coastal States Gas Corp.*, 617 F.2d at 863.   The Court wrote

> it is hard to imagine the 'confidential information' which an auditor might have communicated to the regional counsel. The factual situations the auditor communicates to the attorneys are encountered in the course of auditing third parties, the companies. They do not contain private information concerning the

agency. Rather than 'counseling,' intended to assist the agency in protecting its
interests, the memoranda here seem to be neutral, objective analyses of agency
regulations. They resemble, in fact, question and answer guidelines which might be
found in an agency manual.

*Id.* Thus, the point that Plaintiff seeks to make here about the attorney-client privilege is

completely irrelevant as to whether agencies are or are not required to seek advice from the Office

of Legal Counsel.

### B.     Plaintiff's Argument Regarding the Deliberative Process Privilege Fails

Because the attorney-client privilege protects all of the redacted information, the court need

not take up Plaintiff's arguments regarding the deliberative process privilege or other available

privileges.  But if the court finds it necessary to address those issues, Plaintiff's argument regarding

the deliberative process is unconvincing. Plaintiff states general law about when deliberative

process applies, but that law is not in contention.  Pl.'s Resp. at 12-16.  As stated previously, the

government has not blindly withheld all titles. Rather, the narrowly selected withholdings are

subject lines that are detailed enough to uncover the *nature* of the deliberations because they reveal

specific questions under consideration, including which legal questions were deemed necessary to

resolve before policy decisions could be made. Indeed, "[i]n many instances the descriptions

disclose the potential decisions under consideration by the client agency." ECF No. 54-4,

Anderson Decl. ¶ 22. The withholdings includes the nature of pre-decisional advice "prepared by

[the Office of Legal Counsel] for the consideration of senior government decisionmakers to aid

them in deciding how to proceed." *Id.* ¶ 24. The titles are therefore deliberative; they identify

"advice that was provided about questions under consideration by . . . decisionmakers." *Id*.

Plaintiff inaptly cites to *Electronic Frontier Foundation v. Department of Justice*, 739

F.3d 1 (D.C. Cir. 2014), regarding the deliberative process privilege. Plaintiff argues that the

description given by the government in *Electronic Frontier Foundation* about the withholding

provided more detail than the titles at issue here. Pl.'s Resp. at 15. But this assertion has no bearing to this case. The description in *Electronic Frontier Foundation* reveals certain details surrounding the provision of advice but does not reveal the specific question presented to the Office of Legal Counsel. Pl.'s Resp. at 15. (quoting description). The description does not divulge privileged information. *Id*. The mere existence of a description in *Electronic Frontier Foundation* has no relevance to whether a title can contain information protected by the deliberative process privilege in this case. [1]

Moreover, the court in *Electronic Frontier Foundation* held that the Office of Legal Counsel opinion at issue was pre-decisional and deliberative in that "the Legal Adviser's "role is to give advice to those in the State Department who do make the policy decisions," and, thus, the "flow of advisory material is exactly opposite of the paradigm of 'final opinions,' which typically flow from a superior with policy-making authority to a subordinate who carries out the policy." *Elec. Frontier Found.*, 739 F.3d at 9. And indeed, the title of that opinion was *not* provided and does not appear in the decision. *Id.*

### C.     The Attorney Work Product Doctrine Applies

The government has established that the withheld title and the underlying document record "advice that [the Office of Legal Counsel] provided in connection with ongoing litigation." ECF No. 54-4, Anderson Decl. ¶ 25. They were "prepared by [the Office] for the purpose of assisting

---

[1] As is clear from the discretionary releases in this matter, each disclosure determination is made based on a number of factors, including reasonably foreseeable harm from disclosure. OLC often makes discretionary releases, which involve limited or full waivers of applicable privileges. *See* Dep't of Justice, OLC, *Memorandum for Attorneys of the Office Re: Best Practices for OLC Legal Advice and Written Opinions* (July 16, 2010), available at https://www.justice.gov/olc/page/file/1511836/dl?inline ("OLC will consider disclosing documents even if they technically fall within the scope of a FOIA exemption").

a litigating component of the Department in determining the legal positions it would take in the case." *Id*. Thus, under the law that Plaintiff cites in its brief, the work-product privilege applies. *See* Pl.'s Resp. at 16. (stating that the work-product privilege applies when a document is prepared to "aid in possible future litigation") (cleaned up).

### D.      The Presidential Communications Privilege Applies

Plaintiff argues that the presidential communications privilege does not apply because the government declaration does not state "the level and nature of the officials for whom" the advice was provided. Pl.'s Resp. at 19. But Plaintiff provides no citation or support for the supposed requirement to provide credentials and titles of the President's advisers. *Cf. Cause of Action*, 330 F. Supp. 3d at 350-51 (finding client identity is protected where the identity is sufficiently intertwined with client confidences).   And the government's declaration does state the withholdings involve "senior advisers" and that they were made to "give the President the necessary confidentiality to conduct . . . deliberations." ECF No. 54-4, Anderson Decl. ¶ 31.

Moreover, the cases Plaintiff uses to support its claims are inapt to the circumstances in this case. Plaintiff cites to *Protect Democracy Project, Inc. v. Department of Justice*, Civ. A. No. 20-0172 (RC), 2021 WL 1167094, *3 (D.D.C. Mar. 26, 2011). Plaintiff represents that the government in that case provided the subject of the memorandum. Pl.'s Resp. at 18. According to Plaintiff, the government should therefore also provide the titles in this matter because titles presumably explain the subject of the document. *Id*. ("the titles simply contain the subjects of [the Office's] legal advice . . . [t]heir revelation would cause no harm" (cleaned up)). But in *Protect Democracy Project*, the disclosure of the subject of the memorandum was not at issue. Specifically, the government divulged the existence of the memorandum in response to a request regarding a drone strike in Iraq.  2021 WL 1167094, at *2.   In doing so, the government necessarily revealed the subject of the memorandum. Here, in contrast, the government is withholding the

titles because they would reveal undisclosed and privileged information. ECF No. 54-4, Anderson Decl. ¶ 31.

*Advocates for the West v. Department of Justice*, 331 F. Supp. 3d 1150, 1165 (D. Idaho 2018), a case cited in Plaintiff's Response (at 18), flatly contradicts Plaintiff's position. Indeed, in that matter the Court permitted the withholding of titles. *See id.* at 1171 (finding withholding cover letters that would reveal titles of memoranda reviewing draft presidential proclamations was appropriate).

## II. Plaintiff has Failed to Respond Meaningfully to Defendant's Foreseeable Harm Argument.

It is well understood in this Circuit that a party may "forfeit [an argument] because [the party] does not further develop it (or even mention it again) after [a] 'single, conclusory statement.'" *United States v. TDC Mgmt. Corp.*, 827 F.3d 1127, 1130 (D.C. Cir. 2016) (quoting *Bryant v. Gates*, 532 F.3d 888, 898 (D.C. Cir. 2008)). Indeed, "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work." *N.Y. Rehab. Care Mgmt., LLC v. Nat'l Lab. Rels. Bd.*, 506 F.3d 1070, 1076 (D.C. Cir. 2007) (quotation marks omitted); *see also Cox v. Nielsen*, Civ. A. No. 16-1966 (TNM), 2019 WL 1359806, at *14 (D.D.C. Mar. 26, 2019) (rejecting argument in opposition to motion for summary judgment, in part, on grounds that non-movant presented "undeveloped" argument with "no reference to the record evidence and no citation to authority"); *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) (explaining that the Court need not construct the parties' legal arguments, for "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived"). And certainly, "if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded." *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014).

Here, Plaintiff only addresses foreseeable harm relating to the deliberative process privilege. *See* Pl.'s Resp. at 21-22 (discussing deliberative process privilege in the foreseeable harm context). The entirety of Plaintiff's foreseeable harm argument relating to the other Exemption 5 privileges is as follows: (1) a claim that Defendant is only "mouthing the generic rationale for . . . the asserted privileges"; *Id*. at 21 (cleaned up) and (2) a bald assertion that the DOJ did not "credibly explain why harm would flow from the disclosure" of a title withheld under the work product doctrine. *Id*. These skeletal, conclusory, and undeveloped arguments fail to defeat summary judgment. Nonetheless, the government here addresses foreseeable harm for each privilege raised in its declaration.

## A.    Foreseeable Harm Under the Deliberative Process Privilege

Here, the government has shown foreseeable harm as it relates to the deliberative process privilege. Senior decisionmakers sought "advice from" the Office of Legal Counsel. ECF No. 54-4, Anderson Decl. ¶ 24.    The advice was prepared to "aid them in deciding how to proceed . . .[and] was provided about questions under consideration by those decisionmakers." *Id*. The withholding "is necessary to ensure that [the Office's] clients can request [ ] advice with confidence that their request will not be disclosed without permission." *Id*. "Protecting the confidentiality of the subjects of [the Office's] legal advice provided in the context of . . . presidential (or other Executive Branch) deliberations is . . . essential both to ensure that creative and sometimes controversial legal arguments and theories may be examined candidly, effectively, and in writing, and to ensure that the President, his advisers, and other Executive Branch officials continue to request and rely on frank legal advice from [the Office] and other government attorneys on sensitive matters." *Id*. ¶ 28. The Office of Legal Counsel "has repeat clients throughout the Executive Branch, and whether it maintains the confidentiality of prior requests for advice will impact the willingness of those and

other Executive Branch clients to request advice from [the Office] in the future." *Id*. ¶ 29. The fear

of disclosure of sensitive matters "would do harm to future decisionmaking." *Id*.

Although boilerplate justifications are frowned upon, "the mere recitation of similar

reasoning in showing harm does not by itself render that reasoning boilerplate." *Leopold v. Dep't

of Justice*, Civ. A. No. 19-2796, 2021 WL 3128866, at *4 (D.D.C. July 23, 2021). The above is

more than boilerplate as it specifies how disclosing the titles would lead to foreseeable harm by

chilling full and frank discussion in the oft-repeated context of the Office of Legal Counsel

providing vital advice to government decisionmakers. *See Reps. Comm. for Freedom of the Press

v. FBI*, 3 F.4th 350, 370 (D.C. Cir. 2021) (the inquiry into if disclosure would impede deliberations

going forward is "context-specific").

### B.   Foreseeable Harm Under the Attorney-Client Privilege

As to attorney-client privilege, "it is essential to the proper functioning of the Executive

Branch that clients' willingness to seek [the Office's] legal advice on hard or controversial

questions not be inhibited by concerns about the risk of public disclosure." ECF No. 54-4,

Anderson Decl. ¶ 28. Courts considering the application of the attorney-client privilege have

generally concluded that the chilling effect from disclosure—the harm the privilege exists to

protect against—is sufficient to demonstrate foreseeable harm.  *See Cause of Action*, 330 F. Supp.

3d at 355 (statement in declaration that disclosure would stifle 'full and frank' communication

between the Department and its client agencies sufficient for foreseeable harm to attorney-client

privilege); *see also Am. First Legal Found. v. Dep't of Agric.*, Civ. A. No. 22-3029 (BAH), 2023

WL 4581313, at *8 (D.D.C. July 18, 2023) ("The purpose of the attorney-client privilege

encompassed by Exemption 5, for example, is to provide an 'assurance of confidentiality' to clients

. . . such that disclosure of privileged information is a harm in and of itself. When invoking the

attorney-client privilege, then, an agency likely does not need to reach far beyond the fact of

disclosure to show foreseeable harm."). Accordingly, the declaration's clear statement that disclosure would affect clients' willingness to seek OLC's advice is sufficient to demonstrate that attorney-client privilege applies and the harm from disclosure is reasonably foreseeable.

### C.    Foreseeable Harm Under the Work-Product Privilege

Regarding the work-product privilege, establishing that the privilege applies goes "a long way towards" justifying the withholding. *Wilderness Workshop v. Dep't of Agric.*, Civ. A. No. 21-2108 (JMC), 2023 WL 5672578, at *9 (D.D.C. Sept. 1, 2023) (cleaned up). For both deliberative process and the work-product privileges, "the foreseeable harm requirement is satisfied−even in the absence of an agency explanation−based on the 'context and purpose' of the withheld information." *Id.* (cleaned up). Evidence that the withholdings included "attorney's comments on drafts . . . produced in anticipation of litigation" and confidential "emails between agency employees and agency attorneys . . .  for the purpose of obtaining legal advice" established that the records were covered by the relevant privileges. *Id.* And once the work product doctrine is found to apply, it is clear "that the disclosure of the agencies' attorney-client and work-product withholdings would harm the interests those privileges were intended to protect."  *Id.* at *10.

Here, the title redacted under the work-product privilege is part of a "document . . . prepared by [the Office] for the purpose of assisting a litigating component of the Department in determining the legal positions it would take in [a specific] case." ECF No. 54-4, Anderson Decl. ¶ 25; *see also id*. ¶ 30 ("Compelled disclosure of [the Office's] input into the Department's development of litigation positions would undermine [litigating components' seeking advice from the [Office] on legal theories or on [the Office's] areas of expertise], and the litigating components would be less likely to seek written views from [the Office] in the future."). As such, the foreseeable harm requirement is satisfied.

D.      **Foreseeable Harm Under the Presidential Communications Privilege**

The D.C. Circuit has not yet analyzed "an agency's foreseeable harm showing under the presidential communications privilege." *Am. First Legal Found.*, 2023 WL 4581313, at *9. But "[j]udges on this Court have consistently credited declarations describing the potential chilling effects on confidential and candid presidential decision-making as sufficient identification of foreseeable harm." *Id.* (collecting cases). Since the Defendant has established the chilling effect in its declaration in this matter, the presidential communication privilege applies. *See* ECF No. 54-4, Anderson Decl. ¶ 31 (describing the chilling effect disclosure would have on "the President's ability in the future to rely on the availability of [Office] legal advice in order to effectively carry out the responsibilities of the office").

III.      **_In Camera_ Review is Unwarranted.**

Finally, Plaintiff has requested that this Court review *in camera* Defendant's withholdings if it has concerns about the applicability of claimed exemptions.  According to Plaintiff, this request is defensible because of the "small number of documents at issue." Pl.'s Resp at 22-23. Defendant does not object to the court reviewing the material if the court determines under its own discretion that such review is necessary. Plaintiff's argument, however, lacks merit because Defendant has sufficiently justified its withholdings and Plaintiff has failed to show bad faith.

Whether to conduct an *in camera* review of material produced pursuant to a FOIA request is a decision that lies within the discretion of the district court. *See Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 22 (D.C. Cir. 1984).  Courts, however, generally rule on FOIA actions based on agency declarations without *in camera* review of documents unless there is a showing of bad faith. *Id.* at 23 ("This Circuit has repeatedly held that when the agency meets its burden [under FOIA] by means of affidavits, *in camera* review is neither necessary nor appropriate."); *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978) (noting that although *in camera* inspection "would likely be

appropriate" when there is a showing of bad faith, "the government's burden does not mean that all assertions in a government affidavit must routinely be verified by audit").  "If the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents." *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1387 (D.C. Cir. 1979).

In this case, *in camera* review is not necessary because Defendant has adequately detailed why certain information had been withheld, and Plaintiff fails to provide evidence of bad faith to support *in camera* review of those redactions.

### CONCLUSION

For all these reasons, Defendant respectfully requests that summary judgment be granted in its favor.

Date: June 21, 2024

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK,
Chief, Civil Division

By:          /s/*Joshua Ontell*
JOSHUA ONTELL, VA Bar #92444
Assistant United States Attorney
601 D St., N.W.
Washington, D.C.  20530
(202) 252-7706
Joshua.Ontell@usdoj.gov

*Attorneys for the United States of America*