## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PROJECT ON GOVERNMENT ) 
OVERSIGHT, )
                                        )
       Plaintiff, )
                                          )
          v. )      Civil No. 20-1415 (ABJ)
                                          )
U.S. DEPARATMENT OF JUSTICE )
OFFICE OF LEGAL COUNSEL, )
                                          )
       Defendant. )
_____)

## REPLY IN SUPPORT OF PLAINTIFF'S CROSS-MOTION
## FOR SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………… ii

PRELIMINARY STATEMENT…………………………………………… 1

ARGUMENT…………………………………………………………… 2

I.    The Attorney-Client Privilege Provides No Protection For The Withheld
      OLC Titles, Which At Most Identify The General Subject Of The
      Memos………………………………………………………………… 2

II.   Because The Withheld OLC Titles Fail To Reflect The Back And
      Forth Of The Agency's Deliberative Process Privilege They
      Must Be Produced…………………………………………………  5

III.  DOJ Has Not Carried Its Evidentiary Burden Of Showing The
      Application Of The Attorney Work-Product Doctrine…………………….. 6

IV.   DOJ Has Not Carried Its Evidentiary Burden To Demonstrate That
      The Presidential Communication Privilege Applies……………………… 7

V.    DOJ Has Failed To Carry Its Evidentiary Burden Of Demonstrating
      Foreseeable Harm………………………………………………………… 8

VI.   Because DOJ Would Have To Disclose The Withheld Information
      In Either A *Vaughn* Index Or A Privilege Log It Cannot Rely On FOIA
      Exemption 5 To Justify Its Redactions And Withholdings………………… 11

VII.  In Camera Review Is Warranted Here…………………………………... 11

CONCLUSION…………………………………………………………… 13

## **TABLE OF AUTHORITIES**

**Cases**

*ACLU v. Nat'l Sec. Agency*, 925 F.3d 576 (2d Cir. 2019)……………………………… 3

*Cause of Action Inc. v. DOJ*, 330 F. Supp. 3d 336 (D.D.C. 2018)………………………… 3,9,12

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980)…………….... 5

*CREW v. Dep't of Justice*, 298 F. Supp. 3d 151 (D.D.C. 2018), *aff'd*,
922 F.3d 480 (D.C. Cir. 2019)……………………………………………………… 3

*Elec. Frontier Found. v. DOJ*, 739 F.3d 1 (D.C. Cir. 2014)………………………………... 5

*FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142 (D.C. Cir. 2015)……………… 6

*In Re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997)…………………………………………… 7,8,11

*Judicial Watch, Inc. v. DOJ*, No. 17-832, 2019 WL 4644029 (D.D.C. 2019)……………… 9

*Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108 (D.C. Cir. 2004)……………………………… 8

*Leopold v. DOJ*, No. 19-2796, 2021 WL 3128866 (D.D.C. July 23, 2021)………………… 9

*Pub. Citizen, Inc. v. Dep't of Educ.*, 388 F. Supp. 3d 29 (D.D.C. 2019)…………………… 2,3,12

*Pub. Emps. For Env't Resp. v. EPA*, 211 F. Supp. 3d 227
(D.D.C. 2016)……………………………………………………………………… 1-2

*Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021)…………. 5,8

*Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)……………………………………………… 11

*Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414 (3d Cir. 1991)…………….... 4-5

*Wilderness Workshop v. U.S. Dep't of Agric.*, No. 21-2108 (JMC), 2021 U.S.
Dist. LEXIS 154911 (D.D.C. Sept. 1, 2023)……………………………………….. 9,10

*Wye Oak Tech., Inc. v. Republic of Iraq,* No. 10-1182 (RCL), 2021 WL 11670847
(D.D.C. Jun 22, 2021)……………………………………………………………… 12

**Rules**

Fed. R. Civ. P. 26(b)(5)(ii)………………………………………………………………….. 11

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PROJECT ON GOVERNMENT OVERSIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 20-1415 (ABJ) |
| | ) | |
| U.S. DEPARATMENT OF JUSTICE OFFICE OF LEGAL COUNSEL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPLY IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

In its latest brief Defendant Department of Justice ("DOJ") once again fails to come to terms with what truly is at issue in this case: a handful of words that, unlike the substance of many Office of Legal Counsel ("OLC") opinions themselves, reveal nothing about confidential client communications, predecisional deliberations, the author's mental impressions, or deliberations or advice offered to the President's top advisors. Nor has DOJ rebutted the critical point that the information in the withheld titles mirrors that that defendants as a matter of course must provide in a privilege log or *Vaughn* index. Having failed in its opening brief to meet its burden of proving the applicability of the attorney-client, deliberative process, presidential communications, and attorney work- product privileges to the several-word titles of OLC opinions DOJ withheld under Exemption 5 of the Freedom of Information Act ("FOIA"), the government attempts to remold the facts here to more closely resemble those in cases where courts have recognized the applicability of these privileges. But DOJ's effort to turn Exemption 5 into "an all-purpose FOIA evasion mechanism," *Pub. Emps. For Env't Resp. v. EPA*, 211 F. Supp.

3d 227, 230 (D.D.C. 2016), contravenes the language and intent of the FOIA and the actual nature of the documents at issue.

Of equal importance, DOJ has not met its burden of demonstrating foreseeable harm from disclosure, relying instead on outdated standards rejected by the D.C. Circuit. Legally and factually DOJ's foreseeable harm showings fall far short of what the FOIA requires. Finally, should the Court have any lingering questions about whether and to what extent the claimed privileges protect the withheld OLC titles from disclosure it should conduct an *in camera* review. Although DOJ opposes such review it offers no compelling reason for its position, which, in any event, is undermined by the cases on which it largely relies where the courts resolved the privilege questions only after conducting *in camera* reviews.

## **ARGUMENT**

### I.     **The Attorney-Client Privilege Provides No Protection For The Withheld OLC Titles, Which At Most Identify The General Subject Of The Memos**.

In its opening brief DOJ conceded that it invoked the attorney-client privilege to protect "the name of the recipient and the title or brief description of the relevant entries, *which identify the opinion's subject matter*." Mem. of Pts. & Auths. in Support of DOJ's MSJ ("D's Mem.") at 5, citing Anderson Decl. ¶ 22 (emphasis added). Now, forced to acknowledge that the privilege does not protect the "general purpose of the work performed," *Pub. Citizen, Inc. v. Dep't of Educ.*, 388 F. Supp. 3d 29, 42 (D.D.C. 2019)—the precise information conveyed by the subject matter of the opinions at issue here—DOJ asserts without support that the withheld titles "reveal the motivation for seeking legal services[.]" Reply Mem. of Pts. & Auths. in Support of DOJ's MSJ & in Opp. to P's Cross-MSJ ("D's Reply") at 5, 6. But DOJ draws this language not from its supporting declaration or any other facts in this case but instead from the *Public Citizen* case where the agency had factually demonstrated with a supporting declaration that disclosing the

2

document at issue would reveal the client's motivation for seeking legal advice, something the court's *in camera* review confirmed. *See id.* at 42-43. Such evidence is completely missing here. DOJ has not provided evidence, as in that case, that the missing titles would reveal "in their entirety, the specific topic of the deliberations *and legal advice sought from and provided by the attorney*." Id. at 43 (emphasis added). Instead, the withheld OLC titles are more akin to the "subject lines of emails" which, as the *Public Citizen* decision recognized, "are regularly produced in FOIA cases." 388 F. Supp. 3d at 42.

Further, that the titles may reveal the specific "statutory provisions and subparts" at issue in the OLC opinions, D's Reply at 6, carries no particular significance. The bare recitation in an OLC opinion title of the statutory provisions under consideration in a particular opinion differs substantially from the "confidential legal advice," *CREW v. Dep't of Justice*, 298 F. Supp. 3d 151, 155 (D.D.C. 2018), *aff'd*, 922 F.3d 480 (D.C. Cir. 2019), and the client confidences, *Cause of Action Inc. v. DOJ*, 330 F. Supp. 3d 336, 350 (D.D.C. 2018), the attorney-client privilege protects. Stated differently, as the court in *ACLU v. Nat'l Sec. Agency*, 925 F.3d 576, 589 (2d Cir. 2019) stressed, the attorney-client privilege "protects communications rather than information." Specific "statutory provisions and subparts" fall within the latter category.

DOJ also attempts to distinguish the *ACLU* case, originally cited in its opening brief, as involving a discretionary release where the agency continued to redact select topic headings in the analysis section. D's Reply at 7. DOJ analogizes those redacted topic headings to the several-word opinion titles at issue here. But once again DOJ ignores the most salient features of the *ACLU* case. There OLC released not only the title of the opinion but also a great deal of its substance, including the nature of the "highly classified and strictly compartmented program" at issue, and the fact that the opinion analyzed its legality under a cited executive order, multiple

statues, and the Constitution. 925 F.3d at 586. Moreover, the topic headings in the analysis section that DOJ released, *see* https://www.justice.gov/sites/default/files/pages/attachments/2014/09/19/may_6_2004_goldsmith_opinion.pdf, were far more substantive than simply identifying the statutory provision at issue or the subject of an opinion. For example, topic heading IIC states "If FISA Purported To Prohibit Targeted Wartime Surveillance Against the Enemy Under STELLAR WIND, It Would Be Unconstitutional As Applied." *Id.* Similarly, topic heading IIB in the Analysis section states that "Analysis of STELLAR WIND under FISA Must Take Into Account the September 2001 Congressional Authorization for Use of Military Force." *Id.* Even with this level of detail DOJ produced these and other topic headings, withholding others that presumably would reveal even more substantive and confidential information. Here, by contrast, DOJ has provided no evidence that the handful of words withheld from the OLC titles contain anything remotely as substantive, pointing out instead that they merely disclose "'potential decisions under consideration.'" D's Reply at 6 citing Anderson Decl. at ¶ 22.

Finally, DOJ has failed to rebut its own evidence demonstrating a waiver of the privilege. Its declarant acknowledged the lists containing the purportedly privileged information were "created by a staff assistant for use within OLC as tables of contents[.]" Anderson Decl. ¶ 16. While, as DOJ points out, the attorney-client privilege "extends to an attorneys' clerks and other agents," D's Reply at 8, the withheld information at issue here was shared for a purpose completely independent from advising the client and to someone who did not fall within the claimed attorney-client relationship. Thus, by sharing the precise information withheld here with someone outside the confines of the privileged relationship, DOJ effected a waiver of the privilege. *See, e.g.*, *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1423 (3d Cir.

1991) (disclosure to a third party waives attorney-client privilege unless done so "for the client to obtain informed legal advice").

## II.   Because The Withheld OLC Titles Fail To Reflect The Back And Forth Of The Agency's Deliberative Process Privilege They Must Be Produced.

DOJ's concession that revealing the withheld titles would disclose their subject matter, *i.e.*, the "specific questions under consideration," D's Reply at 10, also completely undermines its reliance on the deliberative process privilege. As Plaintiff explained in its opening brief, "straightforward explanations" of the opinion's subjects, divorced of anything subjective or personal," "bear little resemblance" to documents within the scope of the privilege. Mem. of Pts. & Auths. in Opp. to D's MSJ & in Support of P's Cross-MSF ("P's Mem.") at 13, quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980).

DOJ offers no effective rebuttal to this fundamental proposition, instead insisting that because the withheld titles reveal "legal questions . . . deemed necessary to resolve before policy decisions could be made," D's Reply at 10, they satisfy the deliberative prong of the privilege. But simply stating the questions to be resolved, divorced from any analysis, recommendations, or conclusions, reveals nothing about the substance of that analysis or the "back and forth exchange of ideas, constructive feedback, and informal debate." *Reporters Comm. for Freedom of the Press v. FBI*, 3 F. 4th 350, 364 (D.C. Cir. 2021).

Ignoring this reality, DOJ points to the decision in *Elec. Frontier Found. v. DOJ*, 739 F.3d 1 (D.C. Cir. 2014) ("*EFF*"), as support for withholding OLC opinion titles here. *See* D's Reply at 11. But, as Plaintiff has pointed out repeatedly, the privileged nature of OLC *opinions* provides no support for withholding the *titles* of those opinions as also privileged. Nor, contrary to DOJ's claim, can the *EFF* case be differentiated from this one because the information the agency chose to disclose did not "reveal the specific question presented" for OLC's consideration. D's Reply at

11. To the contrary, the Declaration of Paul P. Colborn, submitted by DOJ in support of its exemption claims in *EFF*, explained that the withheld opinion was prepared in response to a request from the FBI's General Counsel for advice that would assist the FBI in evaluating how to respond to a draft report from DOJ's Office of Inspector General that concerned the FBI's "use of exigent letters and other information requests for telephone records." Declaration of Paul P. Colborn, *EFF v. FBI*, Jt. Appendix, ECF No. 11-4. It defies belief that the several word titles withheld here contain anything close to this level of detail that DOJ willingly disclosed in defense of its decision to withhold the actual opinion at issue in *EFF*.

Indeed, the *EFF* decision illustrates a critical point. In both the discovery and FOIA contexts litigants seeking to justify exemption or privilege claims must in the ordinary course provide this kind of basic information, including who requested the advice and the nature of the advice the requester sought. *See infra* at 11.

### III.    DOJ Has Not Carried Its Evidentiary Burden Of Showing The Application Of The Attorney Work-Product Doctrine.

Plaintiff's opening brief explained that documents that reveal no more than "some inkling of a lawyer's mental impressions" fall outside the protection of the attorney work-product doctrine. P's Mem. at 16. DOJ's three-sentence response merely recites the fact that the document in question was prepared to assist a DOJ litigating component determine its legal position in a case. D's Reply at 11-12. Completely missing from this response, however, is any explanation of whether and how the several-word title DOJ withheld reveals anything whatsoever about a lawyer's mental impressions, or "the attorney's focus in a meaningful way," *FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 151 (D.C. Cir. 2015), which is what the privilege is designed to protect.

Plaintiff's opening brief also explained how DOJ has failed to satisfy the evidentiary

burden that Fed. R. Civ. P. 26(b)(5)(ii) imposes to provide the Court with sufficient evidence

from which to include the privilege assertion is proper. D's Mem. at 17. To this argument DOJ

offers no response whatsoever, apparently conceding the point.

IV.    **DOJ Has Not Carried Its Evidentiary Burden To Demonstrate That
       The Presidential Communication Privilege Applies.**

Plaintiff in its opening brief identified two fatal flaws with DOJ's reliance on the

presidential communications privilege: (1) given its narrow compass, the privilege does not

extend to OLC opinion titles like those at issue here that reflect no deliberations or advice; and

(2) DOJ has failed to identify the level and nature of the officials for whom the opinions were

written, as the privilege requires. DOJ offers no persuasive response to either point.

As to the privilege's reach, DOJ posits that the privilege extends to everything

communicated to the President in the process of providing advice, including OLC titles, because

the President needs "confidentiality to conduct . . . deliberations," D's Reply at 12 citing

Anderson Decl. at ¶ 31. This broad proposition ignores a critical element of the presidential

communications privilege: it exists to protect "documents or other materials that reflect

presidential decisionmaking and deliberations and that the President believes should remain

confidential." *In Re Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997). DOJ has not shown as a

factual matter that the withheld OLC titles here "reflect presidential decisionmaking and

deliberations," a prerequisite to its invocation of the privilege.

Second, DOJ argues that it need not provide the "level and nature of the officials" to

whom OLC provided the opinions from which the titles at issue were withheld to support its

privilege claim. D's Reply at 12. To the contrary, the D.C. Circuit has made clear that "there is,

in effect, a hierarchy of presidential advisers such that the demands of the privilege become more

attenuated the further away the advisors are from the President operationally." *Judicial Watch,*

*Inc. v. DOJ*, 365 F.3d 1108, 1116 (D.C. Cir. 2004). *See also In re Sealed Case*, 121 F.3d at 752

("not every person who plays a role in the development of presidential advice . . . can qualify for

the privilege.").

      Here, DOJ has proffered no evidence whatsoever about the individuals for whom the

documents at issue were created beyond the overly broad label "the President's advisers[.]"

Anderson Decl. ¶ 31. We know nothing about those advisors' positions in the "hierarchy of

presidential advisers" and their operational relationship to the President. Without this evidence

this Court cannot conclude that DOJ properly invoked the presidential communications privilege.

    **V.**    **DOJ Has Failed To Carry Its Evidentiary Burden Of
Demonstrating Foreseeable Harm.**

      DOJ's reply begins its foreseeable harm argument with the remarkable proposition that

Plaintiff has forfeited its right to challenge the government's foreseeable harm showing as to all

but the deliberative process privilege because Plaintiff's foreseeable harm argument centered on

that privilege. D's Reply at 13-14. What DOJ ignores, however, is that its opening brief

addressed foreseeable harm only in the context of the deliberative process privilege. *See* D's

Mem. at 10. Allegations of waiver, therefore, are more properly directed to DOJ.

      Substantively DOJ's foreseeable harm arguments fare no better. First, with respect to the

deliberative process privilege DOJ merely parrots the privilege's "generic rationale," failing to

provide the "focused and concrete demonstration" of how "in the specific context of the agency

action at issue" disclosure will "actually impede *those same* agency deliberations going

forward." *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th at 370 (emphasis added).

Indeed, DOJ essentially concedes the "boilerplate" nature of its justification, D's Reply at 15,

suggesting that viewed as a category the disclosure of OLC titles that reveal the subject of an

OLC opinion "will impact the willingness of those and other Executive Branch clients to request advice from [the Office] in the future." *Id.* at 14-15, citing Anderson Decl. at ¶ 29. But this ignores the fact that OLC routinely discloses the titles of its opinions, including those that identify the opinions' subjects, and in fact disclosed that very information in the majority of records requested here. Agencies seeking OLC opinions, therefore, have little expectation that OLC will shield OLC opinion titles from disclosure under the FOIA.

Nor does the case DOJ cites, *Leopold v. DOJ*, No. 19-2796, 2021 WL 3128866, at *4 (D.D.C. July 23, 2021), provide otherwise. In *Leopold* the court permitted DOJ to take a categorical approach in satisfying the foreseeable harm requirement, but emphasized the need for the agency to still "explain[] the harms with enough specificity so as to render its reasoning not 'boilerplate.'" *Id.* DOJ's attempt here to take a categorical approach fails precisely because DOJ has not proffered evidence of specific harm from the disclosure of OLC titles tied to "context or insight into the specific decision-making or deliberations at issue[.]" *Id.* at *5, citing *Judicial Watch, Inc. v. DOJ*, No. 17-832, 2019 WL 4644029, at *5 (D.D.C. 2019). *See also Wilderness Workshop v. U.S. Dep't of Agric.*, No. 21-2108 (JMC), 2021 U.S. Dist. LEXIS 154911, *25 (D.D.C. Sept. 1, 2023) (foreseeable harm requirement not met where agency, in defending application of deliberative process privilege, "simply rehash[ed] the general purposes of the privilege without any connection to the specific information in the withheld records.").

Second, with respect to the attorney-client privilege DOJ again merely recites the generic rationale for the privilege, failing to come to grips with the fact that disclosing the several-word titles would do nothing to "stifle 'full and frank' communication[.]" D's Reply at 15 (cleaned up). Moreover, DOJ relies on a case, *Cause of Action v. DOJ*, 330 F. Supp. 3d 336 (D.D.C. 2018), that precedes the D.C. Circuit's definitive decision in *Reporters Committee* outlining the

"focused and concrete demonstration" of harm from disclosing the several-word OLC opinion titles that a FOIA litigant must provide. 3 F.4th at 370. In any event, the agency declarant in *Cause of Action* explained with specificity "the manner in which disclosure would stifle 'full and frank' communication between DOJ and its client agencies." 330 F. Supp. 3d at 355. That evidence is missing here.

Third, for the work-product doctrine DOJ essentially relies on the application of the privilege as satisfying the foreseeable harm requirement, citing *Wilderness Workshop* as support. D's Reply at 16. In that case the court looked to "context and purpose" to conclude foreseeable harm would result from the disclosure of material protected by the attorney work-product doctrine. 2021 U.S. Dist. LEXIS 154911 at *29. The agency provided the "context and purpose" through agency declarations and *Vaughn* indices detailing the purposes of the "relevant communications" and the nature of the litigation for which the document was produced. *Id.* at *30. As for context, the court relied on the fact that because litigation was pending, ordering the release of the contested documents would permit the plaintiff "to circumvent the privileges that would protect those materials in actually-pending litigation." *Id.* at *30-31.

By contrast, the record here contains none of those or comparable facts. Moreover, as discussed *supra*, because DOJ has failed to demonstrate the applicability of the attorney work-product doctrine here it necessarily follows that its foreseeable harm arguments also must fail.

Fourth, in attempting to satisfy the foreseeable harm requirement for the documents withheld under the presidential communications privilege, DOJ relies exclusively on the asserted "potential chilling effects on confidential and candid presidential decision-making[.]" D's Reply at 16. But because the withheld titles reflect nothing substantive about "presidential

decisionmaking and deliberations," *In Re Sealed Case*, 121 F.3d at 744, they equally fail to support a finding of foreseeable harm.

**VI.    Because DOJ Would Have To Disclose The Withheld Information In Either A *Vaughn* Index Or A Privilege Log It Cannot Rely On FOIA Exemption 5 To Justify Its Redactions And Withholdings.**

In its opening brief Plaintiff explained how the requirements of both the FOIA and civil litigation require the withholding agency to identify the precise information withheld here. See P's Mem. at 10-11. The "detailed justifications" that both *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), and Fed. R. Civ. P. 26(b)(5)(ii) require include the very information DOJ withheld here from the OLC opinion titles.

In response, DOJ offers the nonsensical argument that requiring litigants to produce a privilege log or *Vaughn* index would risk "pierc[ing] all privileges under the scope of FOIA Exemption 5." D's Reply at 5. To the contrary, under both the FOIA and Rule 26(b) litigants need only produce that information sufficient to demonstrate the applicability of the asserted privilege or exemption. And while that information need not include the very information the agency seeks to protect it must still be sufficiently detailed that a reviewing court can determine if the claimed privilege or exemption applies. Here that necessarily includes the subject matters of the OLC opinions at issue—information that in and of itself reveals nothing protected by Exemption 5.

**VII.   In Camera Review Is Warranted Here.**

Finally, DOJ resists *in camera* review, suggesting that in the absence of bad faith *in camera* review is both unwarranted and unnecessary. D's Reply at 17-18. Tellingly, however, in case after case cited by the government in support of its exemption claims the courts conducted

11

*in camera* reviews without even the hint of bad faith and in circumstances where the agencies had provided far more detail to justify their withholdings than DOJ has proffered here.

For example, in *Public Citizen, Inc. v. Dep't of Educ.*, cited in D's Reply at 5, the court reviewed the documents *in camera* before concluding that the contested email subject lines fell outside Exemption 5. *See* 388 F. Supp. 3d at 42-43. Similarly, the court in *Wye Oak Tech., Inc. v. Republic of Iraq*, cited in D's Reply at 6, concluded the attorney-client privilege did not protect time sheets submitted in support of an attorney's fee request only after conducting an *in camera* review. No. 10-1182 (RCL), 2021 WL 11670847, at *2 (D.D.C. Jun 22, 2021). *See also Cause of Action Inst. v. DOJ*, 330 F. Supp. 3d at 350-51, cited in D's Reply at 7 (concluding the attorney-client privilege protected the client's identity only after *in camera* review disclosed that identity was intertwined with client confidences).

This case presents especially compelling considerations supporting *in camera* review should the Court conclude that it cannot reach a decision on the claimed privileges based on the current record. The proffered declaration provides scant detail, merely parroting the underlying purposes of the claimed privileges. And the volume of records at issue is quite small and therefore *in camera* review imposes a minimum burden on the Court. In resisting such review one is left to wonder of what precisely DOJ is afraid—that its declarant may not have accurately described the documents or that the non-privileged nature of the redactions is nearly self-evident? In either case, the Court should review the documents themselves in the face of any doubts about their protection under FOIA Exemption 5.

## <u>CONCLUSION</u>

For the foregoing reasons and those set forth in Plaintiff's opening brief, Defendant's motion for summary judgment should be denied and Plaintiff's cross-motion for summary judgment should be granted.

Respectfully submitted,

*/s/ Anne L. Weismann*
Anne L. Weismann
(D.C. Bar No. 298190)
5335 Wisconsin Ave., N.W., Suite 640
Washington, D.C. 20015
Phone: 301-717-6610
Weismann.anne@gmail.com

Dated: July 10, 2024                 *Attorney for Plaintiff*