## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ────────────────────────────── ) | |
| PROJECT ON ) | |
| GOVERNMENT OVERSIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 20-1415 (ABJ) |
| ) | |
| U.S. DEPARTMENT ) | |
| OF JUSTICE, ) | |
| ) | |
| Defendant. ) | |
| ────────────────────────────── ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Project on Government Oversight ("POGO") brought this action on May 28, 2020 under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking to compel defendant, the United States Department of Justice Office of Legal Counsel ("OLC"), to release certain records. *See* Compl. [Dkt. # 1] ¶ 7. Defendant has filed a motion for summary judgment, and plaintiff filed a combined opposition to defendant's motion and cross-motion for summary judgment. *See* Def.'s Mot. for Summ. J. [Dkt. # 54] ("Def.'s Mot."); Def.'s Mem. in Supp. of Mot. [Dkt. # 54-1] ("Def.'s Mem."); Pl.'s Opp. to Def's. Mot. and Cross-Mot. for Summ. J. [Dkt. # 56] ("Pl.'s Cross-Mot."); Pl.'s Mem. in Supp. of Pl.'s Cross-Mot. [Dkt. # 56-1] ("Pl.'s Mem."). The defendant's motion is supported by a declaration explaining the justification for the agency's invocation of FOIA Exemptions 5 and 6. *See* Decl. of Trisha Anderson [Dkt. # 54-4] ("Anderson Decl."). Defendant opposes plaintiff's cross-motion, and both motions are fully briefed. *See* Def.'s Reply Mem. in Supp. of Def.'s Mot. and Opp. to Pl.'s Cross-Mot. [Dkt. # 64] ("Def.'s Reply"); Pl.'s Reply in Supp. of Pl.'s Cross-Mot. [Dkt. # 67] ("Pl.'s Cross-Reply").

Because the Court concludes, based on its consideration of the entire record, that the agency's invocation of FOIA Exemption 5 was proper, defendant's motion for summary judgment will be **GRANTED**, and plaintiff's cross-motion for summary judgment will be **DENIED.**

## BACKGROUND

Plaintiff submitted a FOIA request to the OLC on October 1, 2018, requesting a "list of all [OLC] opinions from January 1, 1998 through the present." Def.'s Statement of Undisputed Material Facts [Dkt. # 54-2] ("Def.'s SOF") ¶ 10; Pl.'s Resp. to Def.'s SOF [Dkt. # 56-3] ("Pl.'s Resp. SOF") ¶ 10; *see* Ex. A to Compl. [Dkt. # 1-5] ("FOIA Request"). On April 8, 2019, the OLC conducted a search and processed the records. Def.'s SOF ¶ 16; Pl.'s Resp. SOF ¶ 16. On April 18, 2019, the OLC responded to the request, informing plaintiff that its search had identified twenty-two responsive records. *See* Ex. J to Compl. [Dkt. # 1-14]. Defendant sent the records to plaintiff with some material redacted pursuant to FOIA Exemption 5, 5 U.S.C. § 552(b)(5), and FOIA Exemption 6, 5 U.S.C. § 552(b)(6). *See* Ex. J to Compl. [Dkt. # 1-14]. On May 9, 2019, plaintiff filed an administrative appeal, and the matter was remanded to OLC for a further search. *See* Ex. N to Compl. [Dkt. # 1-18].

On May 28, 2020, plaintiff filed the complaint in this matter, *see* Compl., and on August 12, 2021, the OLC provided plaintiff with additional records with redactions pursuant to Exemptions 5 and 6. *See* Ex. D to Anderson Decl. [Dkt. # 54-4]. Following "lengthy litigation in this matter on the other, now-resolved FOIA requests at issue," OLC agreed to re-review its initial response, *see* Anderson Decl. ¶ 13, and on April 28, 2023, it provided a supplemental response, stating that some material remained redacted pursuant to Exemptions 5 and 6. Def.'s SOF ¶¶ 11–12, citing Anderson Decl. ¶ 13; Pl.'s Resp. SOF ¶¶ 11, 12; *see* Ex. E to Anderson Decl. [Dkt. # 54-

4] ("Supp. Resp."). Plaintiff challenges only the redactions in this supplemental response. *See* Def.'s SOF ¶ 13; Pl.'s Statement of Undisputed Material Facts [Dkt. # 56-3] ("Pl.'s SOF") ¶ 5.

      The records at issue consist of twenty-two lists that were created by an OLC staff assistant as tables of contents for binders that OLC attorneys use for "hard-copy access to the recent work of the Office." Def.'s SOF ¶ 14, citing Anderson Decl. ¶ 16; Pl.'s Resp. SOF ¶ 14. Each list covers one calendar year from 1998 to 2019. Def.'s SOF ¶ 15, citing Anderson Decl. ¶ 16; Pl.'s Resp. SOF ¶ 15. The lists "were prepared for internal reference by a staff assistant and were not intended to serve as a comprehensive or accurate index of all the Office opinions on questions of law." Def.'s SOF ¶ 17, citing Anderson Decl. ¶ 17 and Supp. Resp. at 1; Pl.'s Resp. SOF ¶ 17. With a few "minor exceptions," each list includes entries identifying documents generated by OLC during the relevant year, and each entry identifies "the recipient of the document, a title or brief description of the document, the date of the document, and one or more names of the Office attorneys." Def.'s SOF ¶¶ 21–22, citing Anderson Decl. ¶ 18; Pl.'s Resp. SOF ¶¶ 21–22.

      The OLC invoked FOIA Exemptions 5 and 6 for all of the redacted portions, but plaintiff only challenges the redactions pursuant to Exemption 5. Def.'s SOF ¶¶ 12–13, 24, citing Anderson Decl. ¶¶ 13–14, 21; Pl.'s Resp. SOF ¶¶ 12–13, 24.[1] Defendant claims that all of the redacted portions from the records fall under Exemption 5's deliberative process and attorney-client privileges. Def.'s SOF ¶ 24, citing Anderson Decl. ¶ 21; Pl.'s Resp. SOF ¶ 24. Additionally, the OLC redacted three entries pursuant to Exemption 5's work-product doctrine and the presidential communications privilege. Def.'s SOF ¶¶ 33–34, citing Anderson Decl. ¶¶ 21, 25–26; Pl.'s Resp.

---

[1]    Within the twenty-two lists, plaintiff challenges only the twenty-three redactions made pursuant to Exemption 5. Anderson Decl. ¶¶ 11, 19; Pl.'s SOF ¶ 5.

SOF ¶¶ 33–34.[2]  The redactions cover "only the name of the recipient and the title or brief description of the relevant entries."  Def.'s SOF ¶ 25, citing Anderson Decl. ¶ 22; Pl.'s Resp. SOF ¶ 25.  Defendant states that these redactions "serve to protect the identity of a client and the subject matter of the advice sought and provided."  Def.'s SOF ¶ 26, citing Anderson Decl. ¶ 22.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial."  *Id*. at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable factfinder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation.  *Id*. at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion, the Court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment

---

2       The OLC invoked the work-product doctrine with respect to one entry identified as "2010, No. 7" and invoked the presidential communications privilege with respect to two entries identified as "2010, No. 16" and "2018, No. 4."  Def.'s SOF ¶¶ 33–34, citing Anderson Decl. ¶¶ 21, 25–26; Pl.'s Resp. SOF ¶¶ 33–34.

motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

When the Court is presented with cross-motions for summary judgment, it analyzes the underlying facts and inferences in each party's motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 247.

FOIA cases are typically and appropriately decided on motions for summary judgment. *See Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). In FOIA cases, the agency bears the ultimate burden of proof. *See U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989). The Court may award summary judgment based solely on information provided in an agency's affidavits or declarations that identify "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). These affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

When considering a motion for summary judgment under FOIA, the Court must conduct a de novo review of the record. *See* 5 U.S.C. § 552(a)(4)(B).

## ANALYSIS

FOIA requires government agencies to release records upon request in order to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire &*

*Rubber Co.*, 437 U.S. 214, 242 (1978).  The statute provides that:  "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless the records fall within one of nine narrowly construed exemptions. *See* 5 U.S.C. § 552(b); *FBI v. Abramson*, 456 U.S. 615, 630 (1982).  This framework "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."  *Ctr. for Nat'l Sec. Stud. v. U.S. Dep't of Just.*, 331 F.3d 918, 925 (D.C. Cir. 2003).  When an agency withholds documents or parts of documents, it must explain what it is withholding and the statutory exemptions that apply.  *See Vaughn v. Rosen*, 484 F.2d 820, 825–28 (D.C. Cir. 1973).

When summary judgment turns upon the applicability of an exemption, the Court must "ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt[ed] from disclosure."  *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003) (citations and international quotation marks omitted).  Moreover, pursuant to a 2016 amendment to the FOIA statute, an agency may withhold information pursuant to an exemption only if it "reasonably foresees that disclosure would harm an interest protected by" that exemption.  5 U.S.C. § 552(a)(8)(A)(i)(I).  This "reasonable foreseeability of harm" standard requires the withholding agency to provide "context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure" of the contested records.  *Jud. Watch, Inc. v. U.S. Dep't of Just.*, No. CV 17-0832 (CKK), 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019).

I.       **The withholding of documents was justified under FOIA Exemption 5.**

Defendant withheld several responsive entries in this case pursuant to FOIA Exemption 5, which bars disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  A document may be properly withheld under Exemption 5 if it satisfies "two conditions: its source must be a [g]overnment agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."  *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001); *see also Formaldehyde Inst. v. U.S. Dep't of Health & Hum. Servs.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989), quoting *Tax'n With Representation Fund v. IRS*, 646 F.2d 666, 676 (D.C. Cir. 1981) (Exemption 5 encompasses "the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including "the executive 'deliberative process privilege.'").

Here, the agency invoked the attorney-client privilege, the deliberative process privilege, the attorney work-product privilege, and the presidential communications privilege.  Def.'s Mem. at 4.  All have been found to be incorporated in Exemption 5.  *Loving v. U.S. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008).

A.       **The Attorney-Client Privilege**

Although Exemption 5 "does not itself create a government attorney-client privilege," the privilege

> has a proper role to play in exemption five cases. . . . In order to ensure that a client receives the best possible legal advice, based on a full and frank discussion with his attorney, the attorney-client privilege assures him that confidential communications to his attorney will not be disclosed without his consent.  [There is] no reason why this same protection should not be

> extended to an agency's communications with its attorneys under
> exemption five.

*In re Lindsey*, 158 F.3d 1263, 1269 (D.C. Cir. 1998), quoting *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977).

The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services, and it "is not limited to communications made in the context of litigation or even a specific dispute." *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980). The privilege also protects communications from attorneys to their clients that "rest on confidential information obtained from the client." *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997), quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984). In the FOIA context, the agency is often the "client," and agency lawyers are the "attorneys" for purposes of the attorney-client privilege. *See In re Lindsey*, 158 F.3d at 1269, citing *Coastal States*, 617 F.2d at 863.

The DOJ's declarant explains that "[t]he principal function of OLC is to assist the Attorney General in his role as legal adviser to the President of the United States and to departments of agencies of the Executive Branch." Anderson Decl. ¶ 2. The OLC "provides advice and prepares opinions addressing a wide range of legal questions involving the operations of the Executive Branch," and its legal advice and analysis "inform[s] the decisionmaking of executive branch officials." Anderson Decl. ¶ 2.

The documents involved here are lists of OLC opinions, and defendant has invoked the attorney-client privilege with respect to a small percentage of the opinions on the list, redacting "only the name of the recipient and the title or brief description of the relevant entries." Def.'s SOF ¶¶ 24–25; Pl.'s Resp. SOF ¶¶ 24–25. The redactions amount to less than 4% of the 589

entries, in lists covering a period of twenty-one years.  Anderson Decl. ¶ 27.  According to the agency's declarant, the opinions discussed in the entries "were authored by OLC attorneys and provided to OLC's clients throughout the Executive Branch" who sought confidential legal advice. Anderson Decl. ¶ 23.  The titles that have been redacted are "more than just general subjects," but rather, they "identify the legal questions presented, often with specific reference to particular statutory provisions and subparts," and some of the descriptions "disclose the potential decisions under consideration by the client agency."  Anderson Decl. ¶ 22.  Disclosure of the information contained in the redacted titles would therefore reveal a "particular client's confidential request for legal advice on a particular matter at a particular time" when paired with the identity of the client and the already-disclosed dates.  Anderson Decl. ¶ 23.

Given that the titles of certain documents on the lists, in conjunction with dates and client names, would reveal the subject matter of requests for advice, the Court finds that the redacted portions of the list fall within the scope of the attorney-client privilege.  In the absence of any contrary evidence or showing of bad faith, the Court is bound to accept the agency's declaration, which explains why disclosure of the redacted information would reveal the Executive Branch's confidential requests for legal advice and disrupt the relationship of trust that is critical for the attorney-client relationship.  The OLC "has been the most significant centralized source of legal advice within the Executive Branch."  *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 846 F.3d 1235, 1238 (D.C. Cir. 2017) (citation omitted).  Even though plaintiff has not requested the OLC opinions themselves, the sworn declaration makes clear that disclosure of the few redacted titles, recipients, and dates together would reveal "a particular client's confidential request for legal advice on a particular matter at a particular time," which fits squarely within the

attorney-client privilege.[3]  Anderson Decl. ¶ 23; *see also Pub. Citizen, Inc. v. U.S. Dep't of Educ.*, 388 F. Supp. 3d 29, 46 (D.D.C. 2019) (finding that subject line of email chain was properly withheld under FOIA Exemption 5 and the attorney-client privilege "[b]ecause disclosure of the subject line would reveal [the agency's] motivation for seeking legal counsel and specifics about the nature of the legal services rendered"); *see also Cause of Action Inst. v. U.S. Dep't of Just.*, 330 F. Supp. 3d 336, 350 (D.D.C. 2018) (explaining that "correspondence" and other documents that grow out of the attorney-client relationship are protected if they "reveal the motive of the client in seeking representation") (quotations and citations omitted).  Because protecting the confidentiality of OLC's legal advice "ensure[s] that the President, his advisers, and other Executive Branch officials continue to request and rely on frank legal advice from OLC and other government attorneys on sensitive matters," Anderson Decl. ¶ 28, the attorney-client privilege applies just as it would to any other attorney-client relationship and justifies the withholding of the information at issue.[4]

---

3       Plaintiff cites *Vaughn*, 484 F.2d at 826, and argues that defendant must provide a "detailed justification" for each withholding, which here, would "include the subject matter of the document at issue." Pl.'s Mem. at 11.  Defendant maintains that revealing the titles would reveal the subject matter of the sensitive memoranda, and that the need to "assur[e] that allegations of exempt status are adequately justified" does not require agencies to disclose "factual descriptions that if made public would compromise the secret nature of the information . . . ." *Vaughn*, 484 F.2d at 826; Anderson Decl. ¶ 23.  The Court agrees with the defendant that disclosing the subject matter would compromise the confidentiality of the legal advice sought.

4       Given the Court's finding that all of the redacted information falls well within the attorney-client privilege, it need not address the arguments that some of the redacted information is also covered by the deliberative process, attorney work product, or presidential communications privileges, although the D.C. Circuit has held that the presidential communications privilege protects not only communications 'directly involving and documents actually viewed by the President, but also "documents 'solicited and received' by the President or his 'immediate White House advisers [with] . . . broad and significant responsibility for investigating and formulating the advice to be given to the President.'" *Loving*, 550 F.3d at 37 (alterations in original), quoting *Judicial Watch, Inc., v. U.S. Dep't of Justice*, 365 F.3d 1108, 1114 (D.C. Cir. 2004).

II.    **Segregability**

"Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (collecting cases).  An agency must release "[a]ny reasonably segregable portion of a record," 5 U.S.C. § 552(b), unless the non-exempt portions are "inextricably intertwined with exempt portions" of the record.  *Mead Data Cent., Inc.*, 566 F.2d at 260; *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002).  "In order to demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability," although "the agency is not required to provide so much detail that the exempt material would effectively be disclosed."  *Johnson*, 310 F.3d at 776, citing *Mead Data Cent., Inc.*, 566 F.2d at 261.

Just as with the exemption analysis, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," *Sussman*, 494 F.3d at 1117, citing *Boyd v. Crim. Div. of U.S. Dep't of Just.*, 475 F.3d 381, 391 (D.C. Cir. 2007), and "[a] court may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated."  *Juarez v. U.S. Dep't of Just.*, 518 F.3d 54, 61 (D.C. Cir. 2008), citing *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996).  A district court must make an express finding on segregability.  *Juarez*, 518 F.3d at 60, citing *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007).

The Department's declarant avers that she "personally reviewed line-by-line the redacted information at issue to determine whether any further withheld portion or portions could be released without divulging information protected by one or more of the applicable FOIA exemptions and determined that the redacted portions do not contain reasonably segregable,

nonexempt information." Anderson Decl. ¶ 32.  The declaration further states that the redacted material has not been publicly adopted, incorporated by reference by any policymaker, disclosed publicly, or otherwise referred to in the public for any waiver of the privileges to apply. *See* Anderson Decl. ¶¶ 33–34.  Plaintiff does not address segregability in any of its memoranda, but mentions it once in response to defendant's statement of material facts:  it denies defendant's statement that "[t]he redacted information does not contain reasonably segregable, nonexempt information," stating that this is "a legal issue in dispute."  Def.'s SOF ¶ 43; Pl.'s Resp. SOF ¶ 43.

Considering all of the segregation determinations in combination with defendant's declaration, the Court is satisfied that the agency has met its segregability requirement. *See Juarez*, 518 F.3d at 61 (finding a "page-by-page" review and averments in a declaration that each piece of information withheld could not be reasonably segregated to be sufficient for defendant to meet segregability requirement); *see also Johnson*, 310 F.3d at 776 (holding that agency fulfilled its obligation to show why a document could not be further segregated based on declarant's statement that she personally conducted a line-by-line review of each document withheld to make the segregability determination).  The Court will therefore grant defendant's motion for summary judgment on the issue of segregability .

## CONCLUSION

For all of these reasons, the Court will **GRANT** defendant's motion for summary judgment [Dkt. # 54] and **DENY** plaintiff's cross-motion for summary judgment [Dkt. # 56].  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  September 20, 2024